.16223

CRENSHAW v. SOUTHERN RY. CO.

: (53 S. E. (2d) 789)

*Messrs. Watkins & Watkins,* of Anderson, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellant, cite:*

*Messrs. Oscar H. Doyle,* of Anderson and *W. K. Charles,* of Greenwood, *for Respondent, cite:*

May 30, 1949.

BAKER, Chief Justice.

The complaint of the respondent, who was a passenger on a train of the appellant, a common carrier for hire, and being transported from Washington, D. C., to Seneca, S. C., is bottomed upon the alleged failure of the appellant to stop its train at her destination and in carrying her past the station at Seneca and putting her off the train one-half mile beyond the station in the night-time, in a rain and fog, resulting in alleged injuries to the respondent while undertaking to walk back to the station of her destination. (Incidentally, the point at which it was testified in behalf of the respondent that she alighted from the train was 246 yards from the station, or a fraction more than one-seventh of a mile; and all written records made at the time, of the movement of the train on which the respondent was travelling showed that the train stopped at the station in Seneca and remained standing there for eight minutes.) A trial of the case resulted in a verdict for the respondent for both actual and punitive damages, in the aggregate of $1,000. It is from such judgment that this appeal stems.

Necessarily, upon the trial of the case, the principal witness for the appellant was R. D. Moss, the conductor of the train on which the respondent was a passenger. When this witness was testifying, and while being examined with reference to the record he had made of this particular trip, he was asked by counsel for the appellant if there was any note on the record of that train stopping after it left Seneca between stations. His attempted reply, and that which im-

mediately followed is now reproduced from the record. "A. Nothing more than here is a little bit I wrote in here after—.

"Mr. Doyle (counsel for respondent) : If it relates to this, I would like to see it.

"Mr. Watkins (counsel for appellant) : (To the witness :) When did you write this? A. This was written after Mr. Ferguson (presumably an investigator or claim agent of the appellant) told me about the lady complaining about this.

"Mr. Doyle: That was made afterward? The Witness: Yes.

"Mr. Doyle: We have to object to it.

"Mr. Watkins: We will consent that isn't in a proper record. (To the witness :) Did you make any record of the train being pulled to a stop after it left Seneca? A. No, sir."

The alleged incident out of which this case arose occurred the first part of September, 1947 (prior to September 9). Suit was commenced on July 26, 1948, and the case was tried on October 8, 1948. Train conductors keep a record of all that occurs on a trip or run in a "book" furnished them for that purpose.

On cross-examination of this witness by counsel for the respondent, such counsel undertook to examine him concerning the identical notation on the conductor's record which had been ruled inadmissible on the objection of respondent's counsel when the witness was under direct examination. We now quote from the record:

"Q. Complaint was made pretty soon afterward? A. There was nothing unusual about it. If there had been, I would have made a notation and notified the officials.

"Q. The lady complained pretty shortly afterward? Did you put something into this book because of this complaint?

"The Court: Answer his question.

"The Witness: I put that in that book for information for the Claim Agent.

"Mr. Doyle: About this lady's complaint, wasn't it?

"(No answer.) Okay, if you can't answer.

"Mr. Watkins: Let him answer.

"Mr. Doyle: I'm trying to get him to:

"The Witness: Let me read it.

"The Court: No, sir, I'm not going to let you read it. All I ask you to do is either answer his question yes or no. It doesn't require any explanation. If that was as a result of a complaint made, then you answer it yes. It it wasn't, it's no.

"The Witness: If this was the lady on the train, I assisted her.

"The Court: The last question he asked was why you made this notation in this book. Was it as a result of a complaint made? If it was, answer it yes. That's all there is to it. If it wasn't, answer no.

"The Witness: I would love to tell the jury why I made that notation.

"The Court: You've already told them.

"The Witness: No, I haven't.

"The Court: He asked you a question. You answer yes or no.

"The Witness: What is the question?

"The Court: He asked you why you made that notation in the book. Was it the result of a complaint made or not? If you understand English language, answer that question yes or no.

"By the Witness: I made that notation. * * *

"The Court: Answer it yes or no. Did you make it as a result of a complaint or not.

"The Witness: I made it for information to the Claim Agent.

"The Court: I don't think he's got sense enough to understand the English language. (To Mr. Doyle:) Have you any further questions you want to ask?

"Mr. Doyle: I have no further questions."

The notation on the conductor's record book made at a later date having been ruled inadmissible upon the objection of respondent's counsel, and the "book" (record) not having been offered in evidence, the witness was not subject to cross-examination concerning the notation, but no objection thereto was interposed by appellant.

No complaint by the respondent was ever made to this witness. That a complaint had been made by her to some one connected with the appellant was hearsay in so far as this witness was concerned. In other words, he did not know of his own knowledge that any complaint had ever been lodged. He could have answered "yes" or "no" if he had been asked if he had made an entry in his book after being informed that the respondent had complained that the train did not stop at the depot or station in Seneca on this particular trip, but it was only natural for the witness to prefer to first explain the circumstances under which he had made the notation; and in fact, without an explanation of the circumstances under which the notation was entered, to be made either prior to or after the witness had answered the question propounded by "yes" or "no" (if the question as asked could have been so answered in the light of no complaint ever having been made by the respondent or any one in her behalf to this witness), would have been unfair to the witness and the appellant. Especially is this so, from the standpoint of the witness, since he had already on direct examination, testified that the notation "was written after Mr. Ferguson (the claim agent) told me about the lady complaining about this".

The only issue necessary to be decided in this appeal is: Was it error for the trial Judge to say in the presence of the jury of the appellant's principal witness, Conductor Moss, "I don't think he's got sense enough to understand the English language."

Section 26, Article 5 of the Constitution of 1895 inhibits Judges from charging juries in respect to matters of fact, and limits them to declaring the applicable law.

In the recent case of *Jones v. Elbert, et al.,* 211 S. C. 553, 560, 34 S. E. (2d) 796, 799, it is stated: "In construing this section of the Constitution, this Court has on numerous occasions held 'that, not only must the formal charge to the jury be kept free from any statement of facts in issue or expression as to the weight and sufficiency of evidence * * *, but it has frequently been held that a trial Judge should not by the interrogation of witnesses, by remarks in ruling upon evidence offered, or by comment upon the facts in relation to interlocutory motions, indicate opinions or express views reasonably calculated to influence the jury in deciding a material issue of fact.' A 'judge may not become a participant in the verdict of the jury by indicating an opinion at any stage of the trial on an issuable fact.' *Powers v. Rawls,* 119 S. C. 134, 112 S. E. 78, 83."

Any comment of the trial Judge, in the presence of the jury, upon the testimony of a witness during the trial of a case which tends to weaken the weight of the testimony of such witness, especially where the witness is ridiculed, comes within the prohibition of this section of the Constitution. In this connection, see *Lusk v. State Highway Department,* 181 S. C. 101, 186 S. E. 786, and the cases therein cited.

In passing upon a motion for a new trial, the learned trial Judge recognized and conceded that he should not, in the presence of the jury, have made the remark concerning the appellant's witness, Moss, but was of the opinion that he cured such error when he charged that they were the sole judges of the facts, and that if they had inferred from anything that had taken place during the trial of the case that he had any intention or desire to participate in the facts to dismiss it from their minds.

Of course we know that nothing was more foreign to the mind of the trial Judge than to undertake to prejudice the jury against this witness, and the appellant, but we can reach no other conclusion than that this reflection on the mentality of the witness, coming from the trial Judge, so weakened his testimony in the minds of the jury as to make it nigh unto worthless. As was aptly stated in *State v. Pruitt,* 187 S. C. 58, 61, 196 S. E. 371, 372: "It has long been recognized that even a .slight remark, apparently innocent in its language, may, when uttered by the court, have a decided weight in shaping the opinion of the jury. Vested as the trial judge is, with superior authority, disinterested, and possessing experience not available to the ordinary layman, jurors, as a rule, are anxious to catch his view, upon which to found their conclusions."

Aside from our constitutional inhibition, which this Court has construed, time and again, to encompass remarks made by the trial Judge during the trial, it is the general law that a trial Judge "should * * * refrain from any remarks that are calculated in any way to influence the minds of the jury or to prejudice a litigant. This includes remarks to counsel * * * as well as those touching the character of the witnesses and the value of their testimony." 53 Am. Jur., Trial, Section 76.

We can well appreciate how a Judge may become impatient with a witness who objects to answering a question directly with a "yes" or "no" without a prior explanation; and likewise can we understand the position of the witness. It is not unusual when a Judge orders a witness to answer a question either "yes" or "no" to acquaint the witness with the fact that in making his answer in this form, he will later be permitted to give explanatory testimony thereabout. The situation here could in all probability have been thus avoided, but to the contrary, the trial Judge had ruled that the witness' answer, be it yes or no, required no explanation.

Having reached the conclusion that the appellant was prejudiced by the remark of the trial Judge concerning its principal witness, the judgment appealed from is reversed, and a new trial ordered.

Reversed and remanded.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.