16697

## STATE v. CLARY
(73 S. C. (2d) 681)

*Messrs. Keels & Hyman,* of Florence, *for Appellant,*

*Messrs. J. Reuben Long, Solicitor,* of Conway, and *P. H. McEachin,* of Florence, *for Respondent.*

December 29, 1952.

PER CURIAM.

The appellant, Henry G. Clary, was tried, convicted and sentenced at the January (1952) term of the Court of Gen-

eral Sessions for Florence County on an indictment charging him with involuntary manslaughter in connection with the death of Garris Moody, while operating a motor vehicle in a negligent manner on the night of May 19, 1951. There were three cars involved. The appellant was driving a new Nash car along Highway 301, and traveling west towards Florence. He ran into the right rear end of a Buick car traveling in the same direction, knocking it sideways and into the path of a Ford car which was traveling east. Moody, a passenger in the Buick, died of a broken neck. The driver of the Buick was knocked unconscious but recovered. A passenger in the Ford car was also killed.

There are but two issues raised by the appeal, to wit: (1) Did the trial Judge err in refusing to charge the jury the specific request of appellant "that the burden is on the State of South Carolina to prove beyond a reasonable doubt that it was not an accident." (2) Did the presiding Judge err in refusing to charge the jury the specific request of appellant "that it was unlawful to drive to the left of the center of the road."

At the conclusion of the charge of the trial judge, he inquired if the defendant desired anything further, and we quote from the record.

"Mr. Keels: In connection with your charge of accident, we would like for you to charge the jury that the burden is on the State to prove beyond a reasonable doubt that it was not an accident.

"The Court: I thought I charged that, Mr. Keels. The burden is upon the State, gentlemen, to establish the guilt of this defendant of involuntary manslaughter, as charged in this indictment, by the testimony in this case beyond a reasonable doubt. There is no burden on the defendant. Does that cover what you mean, Mr. Keels?

"Mr. Keels: I said the State must prove every element beyond a reasonable doubt.

"The Court: There is no burden for you to prove accident.

"Mr. Keels: We feel in connection with the law of accident that our request is sound.

"The Court: Isn't that what I charged?

"Mr. Keels: I don't believe you did exactly.

"The Court: What is your contention? I don't follow you.

"Mr. Keels: We request this charge that the burden is on the State of South Carolina to prove beyond a reasonable doubt that it was not an accident.

"The Court: I think I have charged it three times. I can't make an argument, but I think it has been charged three times already."

In addition to the foregoing, we quote from the general charge of the trial Judge pertinent to this issue.

"What do we mean by the term 'proximate cause'? The proximate cause, gentlemen, is the direct cause; it is the immediate cause, though not necessarily in point of time; it is the efficient cause; it is that cause without which the death of Moody would not have been caused or resulted. That is what we mean by the proximate cause.

"There are three necessary and essential elements that the State must establish beyond a reasonable doubt from the testimony in this case, before the State would be entitled to a verdict of guilty of the offense charged in this indictment, to wit: involuntary manslaughter. To reiterate: the State must first establish negligence in the operation of the automobile; second, that such negligence was the proximate cause of the death of Moody; and third, that the death of Moody resulted from the injuries sustained. Those are the three necessary and essential elements that the State must establish beyond a reasonable doubt before you could write a verdict of guilty against this defendant.

\* \* \*

"Likewise it has been argued to you the law of unavoidable accident. In reference to that, I will instruct you that an accident is an occurrence which happens unexpectedly from the unnatural operations of nature alone or result undesign-

edly and unexpectedly from the main agency alone or from the joint operation of both. If the death of the deceased was the result of a pure accident, within the meaning of that definition, of course this defendant could not be guilty of any offense. However, the law does not allow one to excuse himself by the defense of accident if he himself was guilty of negligence and such negligence was the proximate cause of the death of the deceased.

"As I have told you, gentlemen, the burden is upon the State to prove the guilt of the defendant as charged beyond a reasonable doubt. If you should have a reasonable doubt as to his guilt, as I have explained that term to you, then it is your duty to find him not guilty. On the other hand, if the State has satisfied you of this defendant's guilt beyond a reasonable doubt, it is your duty to find him guilty."

It will be perceived that the trial Judge charged the jury in accord with the requested charge, though not in the precise language; and if there was any doubt thereabout, it was set at rest when he stated to appellant's counsel in the presence of the jury, "I think I have charged it three times."

Appellant's other request of the trial Judge that he charge the jury "that it is unlawful to drive to the left of the center line of the road" standing alone, is not a correct statement of the law without stating in connection therewith the exceptions provided in the statute. However, we hereinafter quote from the record from which it appears that counsel for appellant had in mind at the time he made the above stated request, the statutes governing the operation of motor vehicles when one motor vehicle is passing another traveling in the same direction on the highway. There was testimony in behalf of the appellant that at the time he undertook to pass the Buick car, it was driven across the center line, practically straddling same, which interfered with him seeing the oncoming Ford automobile, or passing, and it became necessary for him to hastily return to the right

of the highway in the direction in which he was traveling, and in this way, the front left of the Nash car he was driving came in contact with the right rear of the Buick car in which the deceased was riding, causing it to turn crossways the highway and into the path of the Ford car.

From the record:

"Mr. Keels: We would like for you to charge that it is unlawful to drive to the left of the center line of the road.

"The Court: That does not enter into it, because the defense of contributory negligence is not a defense to a criminal case. I refuse it.

"Mr. Keels: An automobile traveling in the same direction should yield the right of way.

"The Court: I didn't tell them that?

"Mr. Keels: I don't think you did.

"The Court: Going back to the statutory law, Section 69(a) [Code 1942, § 1616(8) (a)], I charge you: 'The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.'

"Subsection (b) provides: 'Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.'

"Anything further?

"Mr. Keels: Nothing further."

We have carefully read the record in this case, and feel impelled to remark that there was ample evidence from which the jury could conclude beyond any reasonable doubt that the negligence, and we may add the recklessness, of the appellant in the operation of the Nash car he was driving was the proximate cause of the collision be-

tween the Buick and Ford cars, resulting in the death of Garris Moody, and another.

· The exceptions are overruled, and the judgment appealed from is affirmed.

BAKER, C. J., and FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.