## 19361

The STATE, Respondent, v. Ronald Paul ADDIS, Appellant

(186 S. E. (2d) 415)

C. *Ben Bowen, Esq.,* of *Abrams, Bowen & Townes,* Greenville, *for Appellant,* cites:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, Asst. Atty. Gen.,* Columbia, *William H. Ballenger, Sol.,* and *V. Laniel Chapman, Asst. Sol.,* Anderson, *for Respondent,* cite:

January 20, 1972.

LITTLEJOHN, Justice:

The defendant, Ronald Paul Addis, was convicted of involuntary manslaughter on July 1, 1971, in the Court of General Sessions for Oconee County. He has appealed.

The evidence reveals that about five minutes after midnight on the morning of August 20, 1970, Bruce McClure

was driving his motorcycle in the middle of the right-hand lane of U. S. Highway 123 between Clemson and Seneca. His motorcycle was struck from the rear by an automobile driven by the defendant. McClure died as a result of the collision.

A coroner's inquest was held on September 8, 1970. A preliminary hearing was held on January 28, 1971. At these hearings some of the State's witnesses testified that after the collision the defendant appeared to be in complete control of his faculties and there was nothing to indicate that he was under the influence of alcohol.

Attorney G. Ross Anderson, Jr. represented the family of Bruce McClure in a civil claim against the defendant, and, sometime prior to the trial of this case, completed a settlement. He appeared at the inquest representing the family of the deceased, and appeared of counsel along with the solicitor in the prosecution of this case.

At the commencement of the trial, counsel for the defendant moved the court to suppress all evidence with reference to consumption of alcoholic beverages by the defendant, on the ground that some of the State's witnesses had testified at the coroner's inquest and at the preliminary hearing that the defendant was not under the influence of alcoholic beverages. The motion was denied. Throughout the trial similar objections were also made, and overruled, to any reference to consumption of alcoholic beverages by the defendant.

At the commencement of the trial counsel for the defendant also moved the court to disallow attorney Anderson's participation in the prosecution of the case. The basis of the motion was Sections 17-1 and 17-2 of the South Carolina Code. The motion was overruled, and Mr. Anderson actively participated in the trial.

On appeal the defendant argues that participation in the prosecution by private counsel deprived him of equal protection of the law, and was a denial of due process. Code Sections 17-1 and 17-2 provide as follows:

"§ 17-1. How criminal action prosecuted.—A criminal action is prosecuted by the State, as a party, against a person charged with a public offense, for the punishment thereof.

"§ 17-2. Prosecuting officer not to accept fees, etc.—No prosecuting officer shall receive any fee or reward from or in behalf of a prosecutor for services in any prosecution or business to which it is his official business to attend, nor be concerned as counsel or attorney for either party in a civil action depending upon the same state of facts."

We do not think that either of these two sections prohibit private counsel from participating in the trial of a criminal case. The sections are designed to control the activities of the solicitor. While it is true, as argued by defense counsel, that the office of the solicitor is a quasi judicial one and his duty is to seek justice and not necessarily convictions in every case, at the same time, traditionally in this State private counsel has been permitted to assist the State in prosecutions. In every criminal prosecution the responsibility for the conduct of the trial is upon the solicitor and he must and does have full control of the State's case. When an attorney, with the consent of the solicitor and the approval of the judge, participates in the trial of a case he assumes the same obligations to the court as the solicitor himself. In the trial of a case it is proper for him to do and say those things which a solicitor might do and say, and no more. If he participates in the trial of a case and does only what a solicitor should do, the defendant has no right to complain. See *State v. Gregory,* 172 S. C. 329, 174 S. E. 10 (1934).

We are not unaware of the fact that sometimes private counsel, assisting the solicitor, has a tendency to become eager in the prosecution. It therefore becomes the duty of the trial judge, as well as the solicitor, to be solicitous of the defendant's rights, working to the end that a defendant's rights be fully protected. Apparently the question is one of first impression in this State. We cannot say that the participation of private counsel violates the con-

stitution or any statutory or common law principle. Such ruling would appear to be in keeping with the weight of authority.

"By the great weight of authority the court may, in its discretion, permit the prosecuting attorney to have the assistance of counsel employed by the prosecuting witness or other persons interested in securing a conviction; but such appointment, it has been held, can be made only on the request or consent of the prosecuting attorney, which, however, may be presumed from the fact of participation and assistance without objection.

"An assistant or a substitute is not, according to one view, disqualified to take part in a criminal prosecution, although employed to prosecute a civil suit based on, or connected with, the same transaction; but under statutes in some jurisdictions attorneys so employed or interested may not assist in the criminal prosecution. . . . *After he has retired from participation in a civil action founded on the same facts special counsel may appear for the prosecution in the criminal case.* 27 C. J. S. District and Prosecuting Attorneys § 29(1) (1959). [Emphasis added.]

We find no error in the allowance of Mr. Anderson's participation in the case.

A review of the evidence is necessary in passing upon the next two questions raised by the defendant on this appeal: (1) Was evidence relating to the consumption of alcohol by the defendant admissible at the trial? (2) Should the trial judge have directed a verdict at the end of the evidence or granted a motion to set the verdict aside after the verdict was returned by the jury?

According to defendant's own admission he had been drinking beer at Clemson between 8 and 10 o'clock. He admitted one or two and that it might have been three, but he was not counting them. He testified that the motorcycle was "right in the middle of the right-hand lane." He testified that he was driving about 50 to 55 miles per hour. Describing the collision he said:

"A. As you come around these two little curves the visibility is pretty bad, and there is a drop that you can't see over it, and that night as I was coming into the curves I didn't see anything."

There was testimony of investigating officers that the weather was cloudy and the roadway was dry. The motorcycle was embedded into the front end of the defendant's automobile. One witness described it as follows:

". . . the motorcycle was embedded in the radiator plumb back to the seat, on the right center of the radiator, just exactly in the right center of the radiator; and me and two or three tried to shake it and pull it out, and you see how it was in there, it was really welded in there; . . ."

Skid marks, not made by the brakes of the car but by the dragging of the motorcycle, indicated that the car and motorcycle came to rest 552 feet from the point of impact. The deceased was thrown onto the hood of the car and traveled some 78 feet before falling to the roadway. The defendant testified that he did not put on his brakes for fear of throwing McClure off the hood and running over him with the car. One witness said the defendant told him that he rounded the curve and saw the tail light, and hit him just as he saw the tail light.

We think that the trial judge properly admitted into evidence testimony relative to consumption of alcoholic beverages. The testimony of witnesses at the coroner's inquest and at the preliminary hearing were not conclusive in the trial. The issue in the trial of this case was: did the defendant proximately cause the death of McClure through criminal negligence?

Criminal ngligence is defined by Section 16-55.1 of the Code as follows:

"With regard to the crime of involuntary manslaughter, criminal negligence is hereby defined as the reckless disregard of the safety of others. Any person charged with the crime of involuntary manslaughter shall be convicted only

upon a showing of criminal negligence as defined in this section."

In determining whether one has acted negligently or criminally negligent all of the facts and circumstances must be considered. One of those facts and circumstances was that the defendant had been drinking beer. One may be criminally negligent in several ways.

The whole of the evidence warrants the inference that the defendant drove with reckless disregard to the safety of others in failing to change the course of travel and avoid hitting the deceased, in failing to slow down so as to avoid hitting the deceased, and in failing to keep a proper look out. In the last analysis it was for the jury to say what weight, if any, under all of the circumstances of this case, should be given to the fact that the defendant had been drinking beer.

The evidence recited hereinabove certainly makes a jury issue on the question of guilt, and we find no error in the refusal of the judge to direct a verdict or set the verdict aside. The trial judge was concerned with the existence of evidence, not with its weight. He properly submitted the factual issues to the jury. See *State v. Jordan*, 255 S. C. 86, 177 S. E. (2d) 464 (1970).

During the trial, investigating officer Gibson referred to a confidential investigation. Counsel for the defendant asked that the jury be excused and moved for a mistrial. Apparently the confidential investigation referred to involved a special study which the highway department was making of highway fatality cases. In the absence of the jury the State offered, with the consent of the defendant, to have Gibson testify further regarding the investigation, but the offer was declined. Exception is taken to the failure of the judge to grant a mistrial. No prejudice has been shown, and we hold the exception to be without merit.

Defendant contends that the judge should have granted a mistrial because of questions asked by Mr. Anderson of witness Durham, the coroner. He was

permitted to ask the witness why the defendant was asked to take a blood test, to which he answered: "Because there was a very strong odor of alcohol on the breath of Mr. Addis when I talked to him in the car." Witnesses had already previously testified to the fact that an alcohol blood test had been given. Neither the State nor the defendant chose to submit the result of the test. We find no error in permitting the question and answer.

The contention that a mistrial should have been granted because the witness was asked if he had discussed the matter with lawyer Bowen is also without merit.

The defendant has failed to convince this Court that he did not receive a fair trial, and the judgment of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.