20001

Paul SIMMONS, Appellant, v. STATE of South Carolina, Respondent

(215 S. E. (2d) 883)

*Messrs. Henry Hammer, Howard B. Hammer,* and *Alvin Hammer,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair,* and *Stephen T. Savitz, Asst. Attys. Gen.,* of Columbia, *for Respondent,*

April 28, 1975.

LITTLEJOHN, Justice.

Paul Simmons, the appellant, was the driver of a motor vehicle which caused the death of two people. He was indicted and tried for murder, and found guilty in February of 1972, resulting in a sentence of life imprisonment which he is now serving.

This action was commenced on October 5, 1972, by the filing of an application for post-conviction relief under § 17-601 of the Code of Laws of South Carolina (Cum. Supp. 1973). On October 12, 1973, the State of South Carolina, respondent, filed its return and a motion to dismiss the action. On April 8, 1974, the circuit court issued its order denying the petition for relief and dismissing the appellant's application.

In this appeal the appellant alleges error in four particulars and asks this Court to reverse the ruling of the circuit

judge. The questions involved, as copied from appellant's brief, are as follows:

"I. Whether the penalty of life imprisonment for conduct causing death by the reckless operation of a motor vehicle, as applied to Appellant, is 'cruel and unusual' punishment in violation of Article I, Section 19 of the South Carolina Constitution and the Eighth Amendment to the United States Constitution in view of the State's statutory scheme of penal laws under which different penalties, to wit, life imprisonment, five years imprisonment or three years imprisonment, are available as punishment for such conduct; and that, based upon the statute which can be selected as the controlling law in a criminal prosecution at the sole whim of the solicitor, the penalty of life imprisonment is rarely applied in contrast to the significantly less severe penalties of three years or five years imprisonment generally applied in the great majority of cases for such conduct?

"II. Whether the Trial Judge's rebuke of trial counsel constituted prejudicial error?

"III. Whether it was prejudicial error for the Trial Judge to permit comment by the solicitor on Appellant's failure to call his wife as a witness when she was unavailable?

"IV. Whether Appellant was deprived of his constitutional rights under the due process clause of the United States Constitution by reason of the insufficiency of the evidence to support the conviction of Appellant for murder?"

Question V was not argued and, accordingly, is treated as abandoned.

Appellant submits that he should be resentenced under § 16-55 (involuntary manslaughter) or § 46-341 (reckless homicide) of the Code, or that the judgment of conviction be set aside and a new trial granted.

The appellant alleges that a sentence of life imprisonment resulting from a wrongful killing caused by the use of an

automobile is cruel and unusual punishment in violation of both the South Carolina Constitution and the Constitution of the United States. Our Court has upheld a similar verdict of murder resulting from the operation of a motor vehicle in *State v. Mouzon,* 231 S. C. 655, 99 S. E. (2d) 672 (1957).

Appellant relies upon the case of *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346 (1972), and argues that South Carolina's statutory scheme of penal laws permits unevenhanded, selective, and arbitrary application of three statutes under which one who kills with an automobile may be prosecuted. Those statutes are: (1) for murder under § 16-52, wherein the penalty at the time of this offense was a sentence of life imprisonment, or (2) for involuntary manslaughter under § 16-55, wherein the penalty is not less than three months nor more than three years imprisonment, or (3) for reckless homicide under § 46-341, wherein the penalty is not more than five years imprisonment, or a fine, or both.

Appellant further argues that the infrequent infliction of a life imprisonment sentence for conduct causing death by reckless operation of a motor vehicle is evidence of and constitutes an arbitrary application of the state's penal laws, and thus amounts to cruel and unusual punishment in violation of the Eighth Amendment.

The fact that a prosecuting attorney may select which of several offenses with which an accused person may be charged is not constitutionally obnoxious. It is rather routine, and essential, for example, that the solicitor must decide whether one shall be charged with robbery on the one hand, or merely larceny on the other; or charged with housebreaking and larceny on the one hand, or merely larceny on the other. In like fashion, a solicitor must often decide whether a person will be charged with assault and battery of a high and aggravated nature, or assault and battery with intent to kill. A discretion must be

exercised. An accused person's protection lies in the fact that he may not be convicted unless upon a fair trial he is found guilty beyond a reasonable doubt of all of the elements of the offense of which he stands charged.

Even as a solicitor has the duty to elect whether to proceed on a charge of murder, reckless homicide, or involuntary manslaughter when one is charged with killing with an automobile, he must in like fashion determine whether an accused person should be charged with murder, voluntary manslaughter, or involuntary manslaughter when one is charged with a wrongful death by the use of a pistol. And for that matter, he may elect to *nolle prosequi* any case and not try it at all.

It is difficult to conclude that the killing of a person with malice using an automobile is less obnoxious than killing one with malice by the use of a gun. In either case the victim is dead.

The contention that the sentence of life imprisonment is infrequently inflicted in cases involving a wrongful killing with a motor vehicle is unsupported by the record. Appellant submits that *State v. Mouzon, supra,* is the only case found in the South Carolina Supreme Court Reports; no figures are available of cases tried resulting in the same penalty which were never appealed. Assuming, however, that the sentence is rare, we did not think that such renders the application of the murder statute in an automobile killing case unconstitutional.

It would hardly be argued that a sentence of life imprisonment resulting from a malicious killing with an electric fan or a tennis racquet, though rare, would be violative of *Furman v. Georgia, supra,* and constitutionally impermissible.

We find no merit in the issue raised by appellant's first question.

The questions submitted hereinabove as numbers II, III, and IV are not proper for consideration upon an application for post-conviction relief. The statute

itself provides that the Uniform Post-conviction Procedure Act "shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction." *Ashley v. State,* 260 S. C. 436, 196 S. E. (2d) 501 (1973).

Questions II and III complain of matters proper for this Court's consideration upon an appeal. It is uniformly held that an application for post-conviction relief is not a substitute for an appeal.

"Generally, post-conviction hearing statutes do not afford relief in the case of alleged errors for which remedies were available before and during the original trial, or by review on motion for a new trial or on appeal. These statutes were not intended to afford a procedure to operate as a substitute for a motion for a new trial, or for an appeal or writ of error; and ordinarily a judgment of conviction may not be challenged on grounds which could have been raised by a direct appeal." 24 C. J. S. Criminal Law § 1606(9)(b).

"We adhere to our former decisions. Errors in a petitioner's trial which could have been reviewed on appeal may not be asserted for the first time, or reasserted, in post-conviction proceedings. See *People v. Eastman,* 33 Misc. (2d) 583, 228 N. Y. S. (2d) 156, affirmed, 18 A. D. (2d) 1102, 239 N. Y. S. (2d) 972; *Ciucci v. People,* 21 Ill. (2d) 81, 171 N. E. (2d) 34; cf. *People v. Hamby,* 32 Ill. (2d) 291, 205 N. E. (2d) 456; *Collier v. Commonwealth,* 387 S. W. (2d) 858 (Ky. Ct. App.)." *State v. White,* 274 N. C. 220, 162 S. E. (2d) 473 (1968).

The alleged prejudicial error resulting from the judge's admonition of counsel for the defendant, and from the solicitor's comment relative to appellant's failure to call his wife do not raise issues for consideration by this Court under the post-conviction procedures act.

The order of the lower court is

Affirmed.

Moss, C. J., and Lewis and Bussey, JJ., concur.

Ness, J., dissents.

Ness, Justice (dissenting) :

In view of the fact that I strongly feel from my review of the entire original transcript that appellant's Due Process and other constitutional rights were violated by the trial court proceedings due to the matters hereinafter discussed, I respectfully dissent from the majority opinion.

The majority, examining the alleged errors separately but not in combination, dismissed without passing upon the merits all but one of the grounds asserted by appellant as not properly reviewable on an application for post-conviction relief. However, upon an examination of all of the alleged errors in combination and separately and a consideration of the whole course of the proceedings in accordance with the standard of review as required by *Rochin v. California,* 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952), it is clear that the alleged errors here present issues of constitutional dimension properly reviewable under the Post-Conviction Procedures Act which is available to :

"(a) Any person who has been convicted of, or sentenced for, a crime and who claims :

"(1) That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this State;" S. C. Code, § 17-601.

*Rochin v. California, supra,* teaches that:

"Regard for the requirements of the Due Process Clause 'inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings [resulting in a conviction] in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.' . . . These standards of justice are not authoritatively formulated anywhere as though they were specifics. Due process of law

is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental', . . . or are 'implicit in the concept of ordered liberty'.

\* \* \*

"Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice.' "

After having carefully reviewed and considered the alleged errors, in combination and separately, and the entire proceedings in accordance with the standard of review required by *Rochin v. California, supra,* the conclusion is compelling that appellant's conviction for murder in the absence of proof of express malice* and his sentence to life imprisonment resulted from a number of factors which offend "a sense of justice" in violation of Due Process and other constitutional guarantees for the following reasons which will hereinafter be discussed more fully in this opinion:

(1) a murder conviction carrying a mandatory life sentence for death caused by recklessness (sans express malice) in the operation of a motor vehicle is indeed extremely rare and unusual under the State's statutory scheme of penal laws which prescribes significantly less severe penalties for identical proscribed conduct, and is therefore discriminatory and incompatible with the idea of equal protection under the laws implicit in the ban on "cruel and unusual" punishment;

(2) the comment by the solicitor upon the failure of appellant to produce his wife as a witness from which he drew an adverse inference against appellant as to his guilt, over appellant's objection which was not sustained by the

---

\* At page 122 of Original Trancript the Trial Judge stated "that there is no evidence whatsoever of express malice."

trial judge and without a curative instruction, violated appellant's fundamental right to test by cross-examination the truth of the adverse inference, imposed upon him the burden of proving his innocence by calling his wife as a witness, and encroached upon his fundamental privilege against testimonial compulsion, infecting the trial with fundamental unfairness violative of Due Process;

(3) the remarks by the trial judge in the presence of the jury during defense counsel's closing oral argument, threatening to place him in jail, were unduly prejudicial, infecting the trial with fundamental unfairness violative of Due Process; and

(4) since malice is an essential element of the offense of murder, and the record is devoid of express malice, and whether a murder conviction can be constitutionally founded upon malice implied from the commission of a misdemeanor as distinguished from the commission of a felony under the felony-murder doctrine is suspect, thus appellant's conviction was violative of Due Process.

In ruling on the issue of whether the sentence imposed upon appellant is cruel and unusual, the majority opinion states: "The contention that the sentence of life imprisonment is infrequently inflicted in cases involving a wrongful killing with a motor vehicle is unsupported by the record." The issue of whether or not such severe a sentence is frequently imposed for the proscribed conduct here is crucial in determining whether the sentence is cruel and unusual according to the decisions of the United States Supreme Court. I therefore must state my disagreement with the aforementioned statement referred to in the majority opinion. Apparently the majority overlooks the fact that respondent was served with a Request for Admissions in which it was requested to admit that with the exception of *State v. Mouzon*, 231 S. C. 655, 99 S. E. (2d) 672 (1957) in South Carolina there has never been a conviction for murder or a sentence of life imprisonment for the offense of causing death by the reckless operation of a motor vehicle.

The answer of the respondent did not expressly admit or deny the requests and consequently constituted an admission of the foregoing facts under Rule 89 of the Circuit Court Rules. *Southern Railway Company v. Crosby,* 201 F. (2d) 878 (4th Cir. 1953); *Batson v. Porter,* 154 F. (2d) 566 (4th Cir. 1946).

Moreover, as a trial judge for the past seventeen years before coming to this Court, I never tried a case in which there was a conviction of murder for homicide carrying a mandatory sentence of life imprisonment based upon malice *implied* from the reckless operation of a motor vehicle; neither am I aware of any such conviction and sentence for the proscribed conduct with the exception of the *Mouzon* case. In all of the criminal prosecutions for homicide caused by the reckless operation of a motor vehicle resulting in convictions of which I am aware, the defendants were convicted of either involuntary manslaughter, for which the maximum prescribed prison sentence is three years, or reckless homicide, for which the maximum prescribed prison sentence is five years. Additionally, the court can take judicial notice that a conviction of murder carrying a mandatory life imprisonment sentence for the proscribed conduct in question is extremely unusual. Surely, if convictions of murder for the proscribed offense were frequent and usual, common experience dictates that many appeals would have resulted from such convictions and sentences and consequently there would be reported decisions on the subject in addition to *Mouzon.*

Having concluded that appellant's conviciton of murder for the proscribed conduct of reckless driving resulting in death is most rare, unusual and extremely infrequent, I am confronted with the question of whether, in the light of the State's statutory scheme of penal laws relative to the proscribed conduct in question here, the sentence imposed upon appellant is cruel and unusual punishment which falls within the ban of the Eighth Amendment of the United States Constitution.

The decision on this issue is controlled by the United States Supreme Court case of *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346 (1972). The concurring justices in the majority opinion of the cited case reasoned that where a penalty inflicted upon a defendant is unusual, such penalty is arbitrary and discriminatory notwithstanding that the statute prescribing the penalty is not invalid in itself. Although *Furman* involved imposition of the death penalty, the Supreme Court stated that "any penalty", including imprisonment, "could be unfairly or unjustly applied," and that "When . . . punishment . . . inflicted in a trivial number of the cases in which it is legally available, the conclusion is . . . inescapable that it is being inflicted arbitrarily." As articulated by Mr. Justice Brennan at 408 U. S. 276, 92 S. Ct. 2746:

". . . when a severe punishment is inflicted 'in the great majority of cases' in which it is legally available, there is little likelihood that the State is inflicting it arbitrarily. If, however, the infliction of a severe punishment is 'something different from that which is generally done' in such cases . . . there is a substantial likelihood that the State, contrary to the requirements of regularity and fairness embodied in the Clause, is inflicting the punishment arbitrarily. This principle is especially important today."

Applying the guidelines and rationale of *Furman* to the present case, the conclusion is inescapable to me that the penalty of life imprisonment inflicted upon appellant is cruel and unusual in violation of the Eighth Amendment to the Constitution. This is so notwithstanding that in 1957 our Court upheld a similar verdict of murder carrying a mandatory penalty of life imprisonment resulting from the operation of a motor vehicle in *State v. Mouzon.* However, *Mouzon* by reason of the infrequency of similar convictions and penalties for the proscribed conduct since then, can no longer be controlling on the issue presented here, especially in light of the fact that the constitutional issue was not considered in the *Mouzon* case.

The majority opinion states that even if it assumed that the sentence for the proscribed conduct is rare, "[w]e do not think that such renders the application of the murder statute in an automobile killing case unconstitutional.", and reasons that "[i]t would hardly be argued that a sentence of life imprisonment resulting from a malicious killing with an electric fan or a tennis racquet, though rare, would be violative of *Furman v. Georgia, supra,* and constitutionally impermissible."

While I do not disagree that the application of sections 16-51, 52 of the Code would be constitutionally permissible in an automobile killing case where express malice is present, the fallacy of the majority's reasoning is evinced by a virtue of the majority's failure to take into account: (1) that the State's statutory scheme of penal laws prescribes significantly less severe penalties than life imprisonment for the proscribed conduct of causing death by the reckless operation of a motor vehicle, and (2) that the rarity of the killing with an electric fan or tennis racquet cannot be *equated* with the frequency of killings by operation of an automobile. In the rare case of killing with an electric fan or tennis racquet, the imposition of a life sentence cannot be considered unusual, whereas in the case of a killing with an automobile, as compared to the frequency of such occurrences, a sentence of life imprisonment is extremely unusual. As to the former case, the resulting death would normally be due to deliberate and intentional conduct, whereas in the case of an automobile the resulting death is generally due to negligence or reckless conduct for which a conviction of murder rarely results.[1] The majority's attractive, but perhaps seduc-

---

[1] A brief review of the recent cases involving deaths by motor vehicles are: *State v. Long,* 186 S. C. 439, 195 S. E. 624 (1938); *State v. McCracken,* 211 S. C. 52, 43 S. E. (2d) 607 (1947); *State v. Rachels,* 218 S. C. 1, 61 S. E. (2d) 249 (1950); *State v. Clary,* 222 S. C. 549, 73 S. E. (2d) 681 (1952); *State v. Cavers,* 236 S. C. 305, 114 S. E. (2d) 401 (1960); *State v. Jenkins,* 249 S. C. 570, 155 S. E. (2d) 624 (1967); *State v. Addis,* 257 S. C. 482, 186 S. E. (2d) 415 (1972), all of which resulted in convictions of either involuntary manslaughter or reckless

tive, analogy is inapposite. A more analogous comparison would be the case of a killing with a tennis racquet by a player in an intoxicated condition recklessly swinging it in such manner as to strike his doubles partner. Surely it cannot be argued in good conscience consonant with "a sense of justice" that the imposition of the penalty of life imprisonment for such conduct would not be "cruel and unusual" punishment.

Other than *State v. Mouzon, supra,* which, by reason 'of *Furman v. Georgia, supra,* cannot have any legal efficacy as a binding precedent on the issue presented here because of the infrequency which a sentence of life imprisonment has been inflicted, if ever, since 1957 for identical proscribed conduct, the majority cites no authority other than *Mouzon* for their holding and, as noted above, *Mouzon* has been eroded by *Furman* and is itself evidence of its rarity as it stands alone in infliction of the life sentence imposed for operation of a motor vehicle.

Other reasons for holding a penalty "cruel and unusual" are variously expressed by the concurring justices in *Furman* as follows: "It is unfair to inflict unequal penalties on equally guilty parties," (408 U. S. 248, 92 S. Ct. 2731) ; "[t]he extreme rarity with which applicable . . . penalty provisions are to put to use raises a strong inference of arbitrariness." (408 U. S. 249, 92 S. Ct. 2732) ; "we deal with a system of law and of justice that leaves to the uncontrolled discretion of . . . juries the determination whether defendants commiting these crimes should die or be imprisoned. Under these laws no standards govern the selection of the penalty." (408 U. S. 253, 92 S. Ct. 2734) ; "If there is a significantly less severe punishment adequate to achieve the purposes for which the punishment is inflicted, the punishment inflicted is unnecessary and therefore excessive." (408 U. S. 279, 92

---

homicide. In fact the case of *State v. Cavers, supra,* the trial judge then, now the author of the majority opinion, eliminated murder and voluntary manslaughter. A reading of these cases indicates facts as serious, if not more serious than the instant case.

S. Ct. 2747) ; "When a country of over 200 million people inflicts an unusually severe punishment no more than 50 times a year, the inference is strong that the punishment is not being regularly and fairly applied." (408 U. S. 293, 92 S. Ct. 2754) ; "When the punishment . . . is inflicted in a trivial number of the cases in which it is legally available, the conclusion is virtually inescapable that it is being inflicted arbitrarily." (408 U. S. 293, 92 S. Ct. 2754) ; "[i]t is . . . clear that these sentences are 'unusual' in the sense that the penalty . . . is infrequently imposed . . . ." (408 U. S. 309, 92 S. Ct. 2762) ; "[t]he penalty is so infrequently imposed that the threat of execution is too attenuated to be of substantial service to criminal justice." (408 U. S. 313, 92 S. Ct. 2764) ; "[t]here is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." (408 U. S. 313, 92 S. Ct. 2764) ; "In striking down the penalty . . . the Court examined the punishment in relation to the offense, compared the punishment to those inflicted for other crimes and to those imposed in other jurisdictions, and concluded that the punishment was excessive." (408 U. S. 325, 92 S. Ct. 2770).

Many, if not all, of the reasons expressed in *Furman* apply with equal force to the punishment here inflicted on appellant, particularly in light of the State's statutory scheme of penal laws for the proscribed conduct here. Under the State's statutory scheme of penal laws an accused is subject to prosecution for death caused by the reckless operation of a motor vehicle under three different statutes without any standards governing selectivity; that is, under Section 16-51, 52 for murder, under Section 16-55.1 for involuntary manslaughter, or under Section 46-341, for reckless homicide. Proof of recklessness is sufficient to convict under each section. *State v. Jenkins, supra.*

The available punishment for the proscribed conduct, however, differs under each section. The maximum penalty of three years imprisonment for involuntary manslaughter

under Section 16-55.1, or the maximum penalty of five years imprisonment for reckless homicide under Section 46-341 is significantly less severe than the mandatory penalty for murder under Sections 16-51, 52, which is life imprisonment.

Not only is the penalty of life imprisonment for the proscribed conduct of causing death by the reckless operation of a motor vehicle rarely inflicted, but it is also harsh and grossly disproportionate to the offense, particularly when it is considered in comparison to the sentences prescribed for other crimes of a considerably more serious nature and to the relatively few instances in the reported decisions where such penalty was imposed for similar conduct. Cf. *Hart v. Coiner,* 483 F. (2d) 136 (4th Cir. 1973).

While it is true, as the majority opinion states, that an application for post-conviction relief is not a substitute for appeal, post-conviction proceedings may be invoked to challenge a conviction on the ground that applicant's trial was infected with such fundamental unfairness as to be violative of Due Process, or that his other constitutional or fundamental rights were violated. Cf. *Hoover v. Beto,* 439 F. (2d) 913 (5th Cir. 1971); *Barber v. Page,* 390 U. S. 719, 88 S. Ct. 1318, 20 L. Ed. (2d) 255 (1968); *Rochin v. California, supra; Rogers v. State,* 261 S. C. 288, 199 S. E. (2d) 761 (1973); Code of Laws for South Carolina, as amended, Section 17-601.

I find it difficult to account for the conviction and infliction of the severe penalty of life imprisonment here when such penalty has rarely been inflicted, if ever, since 1957 on others guilty of like conduct no less offensive than that which appellant committed here, except for the fact that the trial was *infected with fundamental unfairness* so as to be violative of Due Process by reason of the factors to which I hereinafter advert.

It appears from the record that appellant at his trial interposed an objection to the comment by the solicitor upon the failure of appellant to produce his wife as a witness from

which he drew an adverse inference as to his guilt. The objection was not sustained and the trial judge did not give a curative instruction. This alleged error was submitted as a ground for a new trial in appellant's post-trial motion which was denied. The question thus presented, as posed in the briefs of both appellant and respondent, is whether the comment by the solicitor was prejudicially erroneous.

In my opinion, the comment by the solicitor and the failure of the trial judge to sustain the objection and give a curative instruction was prejudicial error and infected the trial with fundamental unfairness violative of Due Process because (1) the adverse inference could not be tested by cross-examination in violation of an accused's fundamental right, (2) it placed the burden upon appellant to prove his innocence by calling his wife as a witness although *she was neither available nor* compellable as such, in violation of the principle that a defendant in a criminal prosecution does not have the burden of proving his innocence, and (3) it in effect was a comment on the failure of appellant to produce evidence of a testimonial or communicative nature, opening the door to encroachments upon constitutional rights of citizens.

As to the issue of whether an accused's rights to cross-examination was violated by reason of the fact that an adverse inference could not be tested by cross-examination, analogous is *Douglas v. State of Alabama,* 380 U. S. 415, 85 S. Ct. 1074, 13 L. Ed. (2d) 934 (1965). There, in a state criminal prosecution against the defendant, the solicitor read a written statement of an individual who, exercising his privilege against self-incrimination on the witness stand, refused to answer the question whether he made the statement. From this refusal to answer, an adverse inference as to the guilt of the defendant was drawn. The trial resulted in a conviction. The United States Supreme Court, in reversing this conviction, pointed out that since the solicitor was not a witness and the individual whose statement was read could not be examined as a witness, the adverse in-

ference drawn from the failure of the individual to testify could not be tested by cross-examination. The court then reasoned that "The circumstances are therefore such that 'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." 380 U. S. 420, 85 S. Ct. 1077.

Similarly, since in the present case the solicitor was not a witness and appellant's wife *was neither available nor compellable as a witness,* the truth of the adverse inference could not be tested by cross-examination. The circumstances were therefore such that the adverse inference from the wife's failure to testify added critical weight to the prosecution's case, tipping the scales in favor of a murder conviction rather than one of involuntary manslaughter, particularly in the light of the absence of proof of express malice. The prejudice flowing from this comment is compounded by the fact that the jury was not confined solely to the issue of guilt or innocence of the appellant but also to the issue of whether their verdict would be for murder or involuntary manslaughter, upon which depended the punishment to be received by appellant. Cf. *State v. White,* 246 S. C. 502, 144 S. E. (2d) 481 (1965). The inference was in a form not subject to cross-examination, in violation of the fundamental right of an accused in a criminal prosecution, and thus unfairly prejudiced appellant's case. See *Barber v. Page,* 390 U. S. 719, 88 S. Ct. 1318, 20 L. Ed. (2d) 255 *to the effect that an issue relating to a defendant's right to cross-examination is properly reviewable in a post-conviction habeas corpus proceeding.*

In *Lowery v. State,* 21 Ala. App. 352, 108 So. 351, 352, the Court of Appeals of Alabama, in reversing a conviction on the ground that the comment by the solicitor on the failure of the defendant to call his friends as witnesses was prejudically erroneous, stated:

"This was improper argument. . . . The constitutional right of every person accused of crime is that he shall not be

deprived of life, liberty, or property, except by due process of law; and due process of law means that he shall be tried according to the law and evidence in the case. It does not mean that a person accused of crime shall be tried by something not in the case, and comment in argument like the argument here complained of, the failure of defendant to put up witnesses, is improper and should not be indulged."

The foregoing language is not in conflict with our prior decisions applicable to witnesses. In this case there is evidence that the appellant's wife was not available. Additionally she was not a compellable witness under the provisions of § 26-403 of the Code hereinafter discussed.

The majority holds that this error is not reviewable on application for Post-Conviction relief. Of interest is the case of *Ginsberg v. United States,* 257 F. (2d) 950, 955 (5th Cir. 1958) in which it is stated: "We hold that this statement of the prosecuting attorney constituted 'plain errors * * * affecting substantial rights.' "—"It made it so unlikely that the appellant could be given a fair trial, as the term is understood in our jurisprudence, that we hold it to be reversible error."

In this case, I too, would hold that the solicitor's comment was "plain error" and made it unlikely that appellant could receive a fair trial. Also see *Steele v. United States,* 222 F. (2d) 628 (5th Cir. 1955); *Wallace v. United States,* 281 F. (2d) 656 (4th Cir. 1960).

Moreover, to approve this comment by the solicitor would open the door to encroachments upon the constitutional rights of citizens contrary to the mandate of the United States Supreme Court in *Spevack v. Klein,* 385 U. S. 511, 515, 87 S. Ct. 625, 628, 17 L. Ed. (2d) 574 (1967), that

"It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

The decisions of the United States Supreme Court hold that a defendant's rights are violated when either a com-

ment or charge of adverse inference is made about failure of the defendant to take the witness stand, *Griffin v. California,* 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. (2d) 106 (1965) ; to produce one's papers, *Boyd v. United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, or exacting evidence of a "testimonial" or "communicative" nature, as distinguished from "real or physical evidence," *Schmerber v. California,* 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. (2d) 908 (1966).

As noted by the author in 61 California Law Review 1422, comment on a defendant's failure to call any witness is compelled evidence of a testimonial or communicative nature as defined in *Schmerber v. California, supra; Malloy v. Hogan,* 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. (2d) 653 (1964), and *California v. Byers,* 402 U. S. 424, 91 S. Ct. 1535, 29 L. Ed. (2d) 9 (1971). This principle applies even more so to the present case where the appellant could not compel the testimonial evidence of his wife by reason of § 26-403 of the South Carolina Code which states that "no husband or wife shall be required to disclose . . . in a criminal proceeding, any communication made by one to the other during their marriage."; the unfairness of the comment was accentuated by the lack of any evidence that appellant's wife was available. *Duckworth v. The First National Bank,* 254 S. C. 563, 176 S. E. (2d) 297 (1970). As one writer has observed to allow the State the benefit of the adverse inference from failure of an accused to produce a witness, particularly where the witness is neither available nor is it within the power of the accused to compel her testimony, lessens the burden of proof beyond a reasonable doubt placed upon the state; and the availability of such procedure upsets the fair state-individual balance that procedural due process is designed to protect. 26 S. C. L. Rev. 224, 238 (1974). Cf. *Schmerber v. California, supra,* 384 U. S. page 762, 86 S. Ct. 1826.

In *Hawkins v. United States,* 358 U. S. 74, 79 S. Ct. 136, 3 L. Ed. (2d) 125 (1958), it was held that a defendant

husband is privileged to preclude his wife from testifying against him in a criminal case even where the wife has indicated a willingness to do so.[2] In *Tallo v. United States,* 344 F. (2d) 467 (1st Cir. 1965), the Court of Appeals for the First Circuit, in reversing judgment of conviction, stated:

"The opinion of the Supreme Court in *Hawkins v. United States,* 358 U. S. 74, 79 S. Ct. 136, 3 L. Ed. (2d) 125 (1958), leaves no doubt as to the existence of a judicially created privilege in a defendant-husband to preclude his wife from testifying against him in a criminal case, even where the wife has indicated a willingness to do so. This privilege is said to be in furtherance of the policy of protecting marital relationships, no matter how turbulent, and defendant raises on this appeal the contention that he was denied the full benefits of this privilege by being forced to claim it in the presence of the jury."

And, as stated by Mr. Justice Brennan, speaking for the United States Supreme Court in *Malloy v. Hogan,* 378 U. S. 1, 11, 84 S. Ct. 1489, 1495, 12 L. Ed. (2d) 653:

"It would be incongruous to have different standards determine the validity of a claim of privilege based on the same feared prosecution, depending on whether the claim was asserted in a state or federal court. Therefore, the same standards must determine whether an accused's silence in either a federal or state proceeding is justified."

To the same effect is the following pertinent language of Mr. Justice Douglas in the recent case of *Donnelly v. DeChristoforo,* 416 U. S. 637, 94 S. Ct. 1868, 1874, 40 L. Ed. (2d) 431 (1974):

"We have here a state case, not a federal one; and the prosecutor is a state official. But we deal with an aspect of a fair trial which is implicit in the Due Process Clause or

---

[2] § 26-403 of South Carolina Code modifies this making spouse's testimony competent but not compellable. *Pastom v. United States,* 116 U. S. App. D. C. 219, 322 F. (2d) 432 (1963).

the Fourteenth Amendment by which the States are bound. *Chambers v. Mississippi,* 410 U. S. 284, 93 S. Ct. 1038, 35 L. Ed. (2d) 297; *Sheppard v. Maxwell,* 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed. (2d) 600; *Turner v. Louisiana,* 379 U. S. 466, 85 S. Ct. 546, 13 L. Ed. (2d) 424; *Irvin v. Dowd,* 366 U. S. 717, 81 S. Ct. 1639, 6 L. Ed. (2d) 751."

Also, in *James v. State,* 223 Ga. 677, 157 S. E. (2d) 471, 476 (1967), the court, in reversing a judgment of conviction on the ground of improper comment about the failure of the defendant's wife to testify, stated:

". . . the defendant could not require her presence as a witness. It was thus not a legitimate subject matter of argument for counsel for the State that the defendant's wife did not testify."

Just as the United States Supreme Court stated that compulsory production of one's books and papers would be compelling an accused to be a witness against himself, so, likewise, in the present case, compulsory production of appellant's wife as a witness, particularly where she was neither available nor compellable as such under the laws of the state, would be compelling him to be a witness against himself. Because of her absence, the appellant suffered the "costly" sanction of an adverse inference comment imposed upon him. The "imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly'." *Spevack v. Klein, supra,* does violence to the Fifth Amendment privilege, *Malloy v. Hogan, supra.*

In my opinion the foregoing circumstances infected the trial with such fundamental unfairness as to be violative of Due Process.

The developing atmosphere of unfairness at the trial was further intensified by the remarks of the trial judge in the presence of the jury threatening defense counsel with a jail sentence while he was making his closing argument to the jury, immediately after which he proceeded no further with the argument. Appellant was thus deprived of his Due

Process rights which accords all parties a full and free opportunity to develop their opposing contentions in oral argument as well as in examination and cross-examination of witnesses. In *Sprinkle v. Davis,* 111 F. (2d) 925 (4th Cir. 1940), the Fourth Circuit in an opinion by the late Judge Soper, in reversing a judgment on the ground that the remarks of the trial judge charging counsel with misstating the facts in oral argument to the jury constituted prejudicial error, stated that the parties should be accorded a full and free opportunity to develop their opposing contentions in the examination and cross-examination of witnesses and in *oral argument,* and that "defendant was denied this opportunity, and was unduly prejudiced in the presentation of his case." And in *Atlantic Refining Company v. Jones,* 70 F. (2d) 89 (4th Cir. 1934) the court held that reversible error committed by the trial judge in rebuking counsel was not cured by his oral charge to the jury because "We do not think, however, that the impression undoubtedly made upon the minds of the jury at the time the incident happened was removed by his statement. The damage has been done." to the same effect see *United States v. Kelley,* 314 F. (2d) 461 (6th Cir. 1963) ; *United States v. Coke,* 339 F. (2d) 183 (2nd Cir. 1964).

In *Crenshaw v. Southern Railway Company,* 214 S. C. 553, 53 S. E. (2d) 789 (1949), a civil case, this Court held that:

"Aside from our constitutional inhibition, which this Court has construed, . . . to encompass remarks made by the trial Judge during the trial, it is the general law that a trial Judge 'should . . . refrain from any remarks that are calculated in any way to influence the minds of the jury or to prejudice a litigant. This includes remarks to counsel . . . as well as those touching the character of the witnesses and the value of their testimony.' "

Finally, this case poses the difficult question whether an essential element of a felony can be constitutionally founded upon an inference drawn from the commission of a mis-

demeanor. Even in the case where the "felony-murder rule" was applied, *Gore v. Leeke,* 261 S. C. 308, 199 S. E. (2d) 755 (1973), this Court questioned "whether or not the felony-murder rule should, or should not, be applied as to every homicide committed in connection with the commission of *any* and *every* felony whether or not inherently or foreseeably dangerous." The trial judge in the present case stated that there was "no evidence whatsoever of express malice." Therefore, we are faced with the question of whether malice—an essential element of the offense of murder—can constitutionally be implied, not from the commission of a felony, but from the commission of the misdemeanors of driving a motor vehicle recklessly and under the influence of intoxicants in violation of Code Sections 46-342 and 46-343.

In this connection, while it is true, as stated in the majority opinion, that the "statute itself provides that the Uniform Post-conviction Procedure Act 'shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction' ", the issue here is not whether the evidence is sufficient, but rather whether there is *any* evidence of malice—an essential element of the offense of murder—to support the conviction. The issue thus raised is of constitutional dimension in accordance with the authority of *Thompson v. Louisville,* 362 U. S. 199, 80 S. Ct. 624, 4 L. Ed. (2d) 654 (1960), and is therefore properly reviewable in a post-conviction proceeding.

In my opinion whether the commission of the misdemeanor offenses of reckless driving and operating a motor vehicle under the influence of intoxicants can support a conviction of murder predicated upon malice implied from the commission of the misdemeanors here is suspect, however, under the facts here, it is not necessary to so decide and I expressly refrain from so determining. *Tot v. United States,* 319 U. S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519; *United States v. Romano,* 382 U. S. 136, 86 S. Ct. 279, 15 L. Ed. (2d) 210 (1965) ; *Leary v. United States,* 395 U. S.

86, 89 S. Ct. 1532, 23 L. Ed. (2d) 57 (1969) ; 50 A. L. R. (3d) 397. In *Tot v. United States, supra,* the court, in reversing a conviction of a defendant for receiving a firearm in interstate commerce based upon evidence of possession of the firearm, from which the inference was drawn held that such inference cannot support the conviction. In so holding, the Court stated that the due process clause of the Fifth and Fourteenth Amendments limited the power to make proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated; and that an ultimate fact of an essential element of an offense inferred from proven facts does not meet the test of due process unless "reason and experience support the inference." In the present case, the ultimate fact of malice, upon which the conviction for murder was based, is inferred from the proven fact of recklessness in the operation of a motor vehicle. As heretofore discussed, clearly experience does not support the inference, particularly when it is undisputed that there has been only one criminal prosecution in South Carolina in which the inference of malice was drawn from proof of reckless operation of a motor vehicle causing death. *State v. Mouzon, supra.*

Having considered this case in accordance with the standard of review set forth in *Rochin v. California, supra,* and applied in *Wallace v. United States, supra,* I am compelled to the conclusion that the unusual and rare conviction of murder carrying a mandatory life imprisonment sentence for the proscribed conduct here which is usually and ordinarily punishable by significantly less severe penalties, resulted from a combination of factors which offend "a sense of justice" and infected the trial with fundamental unfairness violative of appellant's constitutional rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

I am therefore of the opinion that the verdict and judgment should be set aside and the case remanded with directions that the appellant, Paul Simmons, be accorded a new trial.