12615

STATE v. ROBINSON

(147 S. E., 441)

*Messrs. Bussey & Brown,* for appellant,

*Solicitor James Allan,* for respondent,

March 14, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

The defendant above named, Charlie Robinson, a young colored man, was indicted at the June, 1928, term of the Court of general sessions for Charleston County, charged with the murder of Mamie Smith, a colored woman of ill repute. At the call of the case for trial it was learned that the defendant had neither counsel nor funds with which to employ same, and, upon the solicitation of Solicitor James Allan, his Honor, Special Judge John I. Cosgrove, appointed Messrs. Bussey & Brown, recent graduates of the Law School of the University of South Carolina, and young members of the Charleston Bar, who had recently assumed the practice of law in the City of Charleston, to represent

and defend the defendant, without pay. The case was called for trial on the first day of the September, 1928, term of the Court of general sessions for Charleston County before Hon. E. C. Dennis, presiding Judge. Upon motion of Solicitor James Allan, each juror was placed upon his *voir dire* as to his belief in the penalty of capital punishment in murder cases. The trial of the case was conducted by Solicitor James Allan for the State, and Messrs. Bussey & Brown for the defendant; it being the first murder case which either Messrs. Bussey or Brown had ever represented, and the first case of any kind whatsoever that Mr. Brown had ever been engaged in, and the second case that Mr. Bussey had ever tried in the Court of general sessions, the other being a simple assault and battery case. At the conclusion of the introduction of the testimony and evidence, the presiding Judge charged the jury, and in the course of said charge the Judge made the following statement to the jury: "You will see from the indictment which you will have the facts as set forth there. You have heard the evidence, now it is my duty to give you the law," to which exceptions are taken. After the case had been given to the jury, and when the jury had been out approximately 2½ hours, it returned and asked his Honor for further instructions on the law of malice, on which point his Honor further charged the jury, and after deliberating for the short while of approximately 5 minutes, after receiving his Honor's last charge on the law of malice, it returned a verdict of "Guilty of Murder." The defendant was then sentenced to die by electrocution, and this appeal is taken from such sentence and conviction.

The questions involved are thus stated by appellant's attorneys:

1. Were the opinions, conclusions, and inferences of the witness John J. Healy, for the State, admissible in evidence as competent testimony?

2. Was there sufficient evidence to prove that the deceased, Mamie Smith, was *in extremis,* and that she had given up every hope of recovery, at the time of uttering her statement which was admitted as a dying declaration?

3. Was the trial Judge correct in charging the jury as follows: "You will see from the indictment which you will have the facts as set forth there"?

4. Was the trial Judge's second charge on and definition of "malice" correct, and if so was such charge applicable to the facts in this case?

### First Exception

That his Honor erred in requiring each juror to be placed on his *voir dire* as to his belief in regard to the penalty of capital punishment in murder cases, and in refusing to allow any juror who did not believe in capital punishment to serve on this case; the error being that, under the laws of the State of South Carolina, a juror believing in capital punishment as the penalty in a murder case is not a prerequisite as to his qualifications to serve as a juror on any murder case.

This exception is controlled by the decision of *State v. James*, 34 S. C., 49, 52, 12 S. E., 657, at page 658, where the following language was used: "When the juror was asked whether he was opposed to capital punishment, he answered unequivocally that he was. We do not think that the Judge committed error of law in rejecting the juror. In the case of *People v. Damon*, 13 Wend. [N. Y.], 351, Chief Justice Savage said: 'Such a juror is unfit. He has prejudged the question, he has made up his verdict without hearing the evidence, and ought to be excluded on common-law principles. It would be a solemn mockery to go through the form of a trial with such a jury, or even with one such juror. * * * It would be a misnomer to call such a proceeding a trial.' "

The case of *State v. James* was affirmed in a rehearing of the said case as reported in 34 S. C., 579, 13 S. E., at page 325, and has been subsequently followed in the case of *State v. Hyde*, 90 S. C., 296, 73 S. E., 180, which case goes even farther than the *James case* by holding that "where the prisoner completes his jury, without exhausting his right

of challenge, this cures any error on the part of the presiding Judge, in excluding or presenting a previous juror."

## SECOND EXCEPTION

That his Honor erred in allowing the witness John J. Healy, for the State, to give testimony of his opinion and conclusions of the facts in the case, his conclusions and opinions being founded solely and entirely upon a certain picture which the State had offered in evidence, which picture the witness himself had not taken, and his testimony being purely hearsay, having been gathered from the statements of other witnesses on the stand, he, the said John J. Healy, knowing nothing of the facts of the case by his own admission other than his conclusions arrived at from viewing the said picture and scene of the alleged crime; the error being that this testimony was not competent under the rules of evidence and the laws of the State of South Carolina.

By reading of the testimony, and particularly page 29, folio 20, of the transcript of record, counsel for the defendant expressly consented to the picture in this case being introduced by the State's witness, Frank T. McNeill. By referring to the testimony and the subsequent testimony of Mr. Healy, it will be noted that all the responses or testimony with reference to the picture were given in response to questions of the defendant's counsel and were not brought out by the State. Defendant's counsel is therefore in no position to complain as to matters brought out in response to his questions and not only without objection on his part, but when solicited by him.

As to the third and fourth exceptions, dying declarations, we think there was a sufficient showing: The dying declaration itself clearly shows that it had all the requisites of a dying declaration—first, the death of the declarant was imminent when the declaration was made; second, she was so fully aware of approaching death as to be without hope of recovery; third, the death of declarant was

the question under investigation; and, fourth, the circumstances of her death were the subject of the declaration. *State v. McCoomer*, 79 S. C., 63, 60 S. E., 237, at page 239, which case follows the cases of *State v. Banister*, 35 S. C., 295, 14 S. E., 678; *State v. Johnson*, 26 S. C., 152, 1 S. E., 510.

In the *McCoomer case* it is laid down that: "Primarily the Circuit Judge decides whether these conditions have been met, and this Court will not interfere with his ruling except when clearly convinced that he reached an incorrect conclusion prejudicial to the accused." This view is also sustained in the following decisions of this State: *State v. Gallman*, 79 S. C., 229, 60 S. E., 682, at page 685; *State v. Banister*, 35 S. C., 295, 14 S. E., 678; *State v. Jaggers*, 58 S. C., 41, 36 S. E., 434; *State v. Bradley*, 34 S. C., 139, 13 S. E., 315.

In the case of *State v. Wideman*, 110 S. C., 394, 96 S. E., 688, it was held that, where declarant made statement that he was shot to death and was not going to get well, this sufficiently showed that he was *in extremis*.

Exception 5 is overruled as being without merit, as it was part of *res gestæ*.

The exceptions as to the Judge's charge are overruled. His Honor charged the law correctly as a whole. In defining malice his Honor charged: "Murder is the killing of a human being with malice aforethought either expressed or implied. That does not mean two kinds of malice, but it means one is expressed and the other is implied from what is done. Malice is presumed where it appears that one person kills another with a deadly weapon, but that presumption does not continue when all the evidence is in. Malice is the essential element of murder but need not be present for any appreciable time if it is there when the act is done. Malice is a term of art but in the sense you are to consider if it is the intentional doing of a wrongful act without justification or excuse."

We see no error as complained of by the exceptions. Both of the lawyers assigned to defend the unfortunate defendant are to be commended for their faithfulness and zeal and ability.

All exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.