22614

Dale Robert YATES, Petitioner v. James AIKEN, Warden, CCI,
and the Attorney General, South Carolina, Respondents.

(349 S. E. (2d) 84)

Supreme Court

*David I. Bruck,* and *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock,* and *Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia, *for respondents.*

Heard March 26, 1986.

Decided Sept. 29, 1986.

NESS, Chief Justice:

This case is before us on remand from the United States Supreme Court for reconsideration of Yates' petition for writ of habeas corpus. The petition is denied.

Yates was convicted of murder and armed robbery in 1981 and was sentenced to death upon recommendation of a jury. This Court affirmed the conviction and sentence. *State v. Yates,* 280 S. C. 29, 310 S. E. (2d) 805 (1982), cert. den., 462 U. S. 1124, 103 S. Ct. 3098, 77 L. Ed. (2d) 1356 (1983). Yates' application for post conviction relief was denied, and he sought a writ of certiorari from this Court to review the decision of the circuit court. Yates also filed a petition for writ of habeas corpus in the original jurisdiction of this Court alleging, for the first time, constitutional error in the jury instructions at trial. The petitions were consolidated and both were denied by summary order. The United States Supreme Court vacated the denial of the petition for writ of habeas corpus and remanded for reconsideration in light of its decision in *Francis v. Franklin,* 471 U. S. 307, 105 S. Ct. 1965, 85 L. Ed. (2d) 344 (1985). *Yates v. Aiken,* _____ U. S. _____ , 106 S. Ct. 218, 88 L. Ed. (2d) 218 (1985).

At Yates' trial the jury was instructed that malice is

presumed from the use of a deadly weapon. No objection to the charge was made, and the issue was not raised on direct appeal. Approximately one year after Yates' conviction was affirmed, this Court found error in a similar malice charge. *State v. Elmore*, 279 S. C. 417, 308 S. E. (2d) 781 (1983). The jury instruction at Yates' trial suffered from the same infirmities present in *Elmore* and addressed in *Francis v. Franklin, supra.*

The question we must resolve is whether *Elmore* may be applied retroactively to invalidate a conviction which was final at the time *Elmore* was decided. We have expressly stated that *Elmore's* retroactive effect is limited to cases pending on direct appeal at the time that case was decided and will not apply to collateral attacks on criminal convictions. *McClary v. State*, 287 S. C. 160, 337 S. E. (2d) 218 (1985). In light of the remand of this case, however, we take this opportunity to re-evaluate and expand on our holding in *McClary.*

Decisions from the United States Supreme Court regarding retroactive application of new rules of criminal law are a mass of confusion. Indeed, that Court has noted that the development of the law of retroactivity is "almost as difficult to follow as the tracks made by a beast of prey in search of its intended victim." *United States v. Johnson,* 457 U. S. 537, 102 S. Ct. 2579, 2584, 73 L. Ed. (2d) 202 (1982), citing *Mackey v. United States,* 401 U. S. 667, 91 S. Ct. 1160, 1172, 28 L. Ed. (2d) 404 (1971) (Harlan, J., concurring). In applying those precedents at the state level to determine the retroactive effect of a prior state decision, one factor is controlling. "Retroactive application is not compelled, constitutionally or otherwise." *Solem v. Stumes,* 465 U. S. 638, 104 S. Ct. 1338, 1341, 79 L. Ed. (2d) 579 (1984). *See also, United States v. Johnson,* 102 S. Ct. at 2583, citing *Linkletter v. Walker,* 381 U. S. 618, 85 S. Ct. 1731, 1737, 14 L. Ed. (2d) 601 (1965); [" 'The Constitution neither prohibits nor requires ... retrospective effect' be given to any 'new' constitutional rule."]; and citing *Great Northern R. Company v. Sunburst Oil & Refining Company,* 287 U. S. 358, 53 S. Ct. 145, 148 77 L. Ed. 360 (1932) [" 'the federal constitution has no voice upon the subject' of retrospectivity."] In the absence of constitutional mandate, this Court is free to determine our own standards regarding retroactivity of state decisions.

While not binding on us, several of these decisions are instructive on the issue of retroactivity.

Prospective application should be afforded a new rule of criminal procedure which is a "clear break" from earlier procedent. *United States v. Johnson*, 102 S. Ct. at 2587, citing *Desist v. United States*, 394 U. S. 244, 89 S. Ct. 1030, 1033, 22 L. Ed. (2d) 248 (1969). *See, e.g., Batson v. Kentucky*, _____ U. S. , 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986) (White, J., and O'Connor, J. concurring in separate opinions; Burger, C. J., and Rehinquist, J., dissenting). *See also State v. Hawkins*, South Carolina Supreme Court Order dated June 6, 1986 [applying *Batson v. Kentucky* prospectively from the date of the decision.] Full retroactivity, even by collateral attack, should be permitted when a ruling establishes that the trial court's action is void *ab initio* or that defendant's conduct was not subject to criminal punishment. *United States v. Johnson*, 102 S. Ct. at 2587, and cases cited therein. The gray area between these two bright line rules has resulted in the majority of litigation on this issue.

We are persuaded by Justice Harlan's view that a new rule of criminal law which does not fall into one of the categories discussed above should be applied retroactively to all cases pending on direct review at the time the new decision is issued. *See, Desist v. United States, supra* (Harlan, J., dissenting); *Mackey v. United States, supra* (Harlan, J., concurring) [adopted in *United States v. Johnson, supra*, as to new decisions arising under the Fourth Amendment.] *See also, Shea v. Louisiana*, 470 U. S. 51, 105 S. Ct. 1065, 1069, 84 L. Ed. (2d) 38, citing *United States v. Johnson*, 102 S. Ct. at 2594. This rule is, of course, subject to traditional standards of waiver and harmless error.[1] *Shea v. Louisiana*, 470 U. S. 51, 105 S. Ct. 1065, 1070, 84 L. Ed. (2d) 38 (1985) at footnote 4; *Reed v. Ross*, 468 U. S. 1, 104 S. Ct. 2901, 82 L. Ed. (2d) 1 (1984).

Justice Harlan's view has several advantages. Retroactive effect of a new rule is appropriate when the purpose of the new rule is to "enhance the accuracy of criminal trials."

---

[1] *See also, Rose v. Clark*, _____ U.S. _____ , 106 S. Ct. 3101, 92 L. Ed. (2d) 460 [applying harmless error analysis in a collateral attack (habeas corpus) on an unconstitutional jury instruction without addressing the issue of retroactivity].

*Solem v. Stumes,* 104 S. Ct. at 1342. On one hand, the Harlan approach avoids the problem of the Court becoming a "super-legislature," picking one case at random in which to announce a new rule, "then letting all other similarly situated persons be passed by unaffected and unprotected by the new rule." *Shea v. Louisiana,* 105 S. Ct. at 1069. On the other hand, it prevents the illogical result of reversing, on collateral review, a decision on the basis of a rule of law which did not exist at the time the case was finally decided. *Hankerson v. North Carolina,* 432 U. S. 233, 97 S. Ct. 2339, 53 L. Ed. (2d) 306 (1977) (Powell, J., concurring).

Accordingly, we adhere to our decision in *McClary* ██ that the retroactive application of *Elmore* is limited to cases pending on direct appeal at the time *Elmore* was decided. Collateral attack of a criminal conviction on the basis of legal precedent that developed after the conviction became final must be reserved for those cases in which the trial court's action was without jurisdiction or is void because the defendant's conduct is not subject to criminal sanction.

We realize that many factors affect the progress of a case through the judicial system, and the speed of appellate review will necessarily differ from case to case. Even under our view of the scope of retroactivity, it may be inevitable that some similarly situated defendants will be treated differently. *United States v. Johnson,* 102 S. Ct. at 2591, footnote 17. However, we believe our approach is less likely to result in inequitable treatment among similarly situated individuals than is the approach applied by the federal courts. "The distinction ... properly rests on considerations of finality in the judicial process. The one litigant already has taken his case through the primary system. The other has not. For the latter, the curtain of finality has not been drawn. Somewhere, the closing must come." *Shea v. Louisiana,* 105 S. Ct. at 1070.

While we affirm Yates' conviction, we raise, *sua* █ *sponte,* the propriety of Yates' death sentence in light of the United States Supreme Court's decision in *Enmund v. Florida,* 458 U. S. 782, 102 S. Ct. 3368, 73 L. Ed. (2d) 1140 (1982). In that case, the Supreme Court held the Eighth Amendment forbids the imposition of the death penalty on

"one who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force ... be employed." *Id.* at 3376. See, *State v. Peterson & Stubbs,* 287 S. C. 244, 335 S. E. (2d) 800 (1985). Rather than remanding this case for a new sentencing proceeding, this Court may make its own review of the record to determine the factual questions raised by *Enmund. Cabana v. Bullock* _____ U. S. _____ , 106 S. Ct. 689, 88 L. Ed. (2d) 704 (1986). See also *State v. Patterson,* 285 S. C. 5, 327 S. E. (2d) 650 (1984).

Yates and his compatriot Henry Davis spent two days driving around the Greenville area looking for a store to rob. The two finally agreed upon a rural store operated by Willie Wood, and entered the store.

Yates, armed with a gun, and Davis, brandishing a knife, confronted Wood, who was standing behind the store counter. Yates demanded money. Wood hesitated, and Davis repeated the demand. Wood gave approximately $3,000 in cash from the cash register. Davis then ordered Wood to lie across the counter. When Wood refused, Yates pointed his gun at Wood. Wood stepped back and raised his hands in a defensive posture. Yates fired. The bullet passed completely through Wood's hand and tore the flesh on Wood's chest.

Alerted by the noise, Wood's mother, Helen Wood, entered the store from a door leading to the adjoining post office. Wood started from behind the counter with his own gun. Davis lunged at Mrs. Wood with his knife. The three struggled together for a few moments before Wood began shooting Davis. Mrs. Wood fell to the floor from knife wounds in her chest and died within moments. Davis died at the scene from gunshot wounds.

After shooting Wood in the chest, Yates took the money from Davis and fled. Yates was not present in the store when Mrs. Wood and Davis were killed. He learned of their deaths after his arrest.

Yates was found guilty of the murder of Mrs. Wood under the theory of the "hand of one, hand of all."

When two or more persons aid, abet and encourage each other in the commission of a crime, all being present, each is guilty as a principal. *State v. Hicks,* 257 S. C. 279, 185 S. E. (2d) 746 (1971).

*Enmund* does not prevent a conviction of murder against one who did not actually take life. It does not "affect the state's definition of any substantive offense, even a capital offense." *Cabana v. Bullock,* 106 S. Ct. at 696, citing *Reddix v. Thigpen,* 728 F. (2d) 705 (5th Cir. 1984). Rather, its holding relates solely to the imposition of the death penalty upon one already convicted of murder as the state defines that offense.

We have little difficulty in finding that Yates attempted to kill and intended that life be taken. He attempted to kill Wood by shooting him in the chest. Even though the ultimate victim was someone other than the person Yates attempted to kill, Yates' intent is not diminished in any way. *State v. Gandy,* 283 S. C. 571, 324 S. E. (2d) 65 (1984). Therefore, Yates' death sentence is appropriate under the holding of *Enmund v. Florida.*

The petition for writ of habeas corpus is

Denied.

GREGORY, HARWELL and CHANDLER, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. In my view, the doctrine of retroactivity should not prevent this court from reviewing constitutional issues or court decisions affecting the truth-finding process when raised in collateral proceedings.

The majority opinion concludes that *Shea v. Louisiana,* 470 U. S. 51, 105 S. Ct. 1065, 84 L. Ed. (2d) 38 (1985) and *McClary v. State,* 287 S. C. 160, 337 S. E. (2d) 218 (1985), support the concept of a limitation on the doctrine of retroactivity in the application of the principles enunciated in *State v. Elmore,* 279 S. C. 417, 308 S. E. (2d) 781 (1983), to those cases pending on direct appeal. The majority's attempt to distinguish between direct and collateral challenges in the application of the doctrine of retroactivity is, in my opinion, misplaced in cases where the alleged error affects the truth-finding function and particularly in those cases where the state seeks the ultimate punishment.

The majority justifies its distinction on the need to draw "the curtain of finality," citing *McClary v. State, supra,* and

*Shea v. Louisiana, supra.* I would respectfully point out that neither *McClary* nor *Shea* was a death penalty case; and under South Carolina law in death penalty situations, we are required to conduct in favorem vitae review. The majority apparently overlooks or minimizes the finality of its decision in this case — death — where there is a strong possibility that the conviction was constitutionally infirm. The concern for finality that might otherwise dictate non-retroactive review of constitutional decisions on collateral attack should not override constitutional considerations in the instant case.

In *State v. Elmore, supra,* this court held that a presumption of malice from the use of a deadly weapon erroneously constituted a mandatory presumption rather than a permissive inference. In *State v. Woods,* 282 S. C. 18, 316 S. E. (2d) 673 (1984), this court found that such mandatory presumption is prejudicial and constitutes reversible error. These two decisions are in line with the decision of the Supreme Court of the United States, holding that erroneous instructions· regarding a necessary element of an offense such as malice substantially impairs the truth-finding function of the jury. *Francis v. Franklin,* 471 U. S. 307, 105 S. Ct. 1965, 85 L. Ed. (2d) 344 (1985).

In *McClary v. State, supra,* the Supreme Court of South Carolina held that retroactive application of *State v. Elmore,* will be limited to those cases pending on direct appeal and will not apply to collateral attacks on criminal convictions. Prior to *McClary,* the Court allowed review of *Elmore*-type errors retroactively in *State v. Woods, supra, State v. Jennings,* 280 S. C. 62, 309 S. E. (2d) 759 (1983), and *State v. Llewellyn,* 281 S. C. 199, 314 S. E. (2d) 326 (1984). A reading of *McClary* shows that this court based its decision upon its understanding of *Shea v. Louisiana, supra,* whose reasoning the court adopted and presumably accepted as binding precedent. I would point out that the Supreme Court of the United States, in *Shea,* was concerned with a non-truth-finding error, whereas the error complained of in this case is clearly a truth-finding error.

The principles of retroactivity set forth in *United States v. Johnson,* 457 U. S. 537, 102 S. Ct. 2579, 73 L. Ed. (2d) 202 (1982); and *Solem v. Stumes,* 465 U. S. 638, 104 S. Ct. 1338, 79

L. Ed. (2d) 579 (1984), provide a rational framework for applying new constitutional decisions retroactively. These decisions recognize that complete retroactive effect should be given, even when raised by collateral proceedings, to new constitutional rules whose major purpose is to overcome an aspect of the criminal trial that substantially impairs the truth-finding function and raises serious questions about the validity of guilty verdicts. This pronouncement of retroactivity is made particularly clear in *Williams v. United States*, 401 U. S. 646, 653, 91 S. Ct. 1148, 28 L. Ed. (2d) 388 (1971), wherein the United States Supreme Court held:

> Where the major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect.

See also *United States v. Johnson, supra,* and *Reed v. Ross,* 468 U. S. 1, 104 S. Ct. 2901, 82 L. Ed. (2d) 1 (1984).

The doctrine against burden shifting presumptions set out in *Francis v. Franklin, supra,* is not a clear break with prior law. The United States Supreme Court in *Sandstrom v. Montana,* 442 U. S. 510, 99 S. Ct. 2450, 61 L. Ed. (2d) 39 (1979), decided prior to *Yates,* held that conclusive presumptions or instructions which shift the burden of persuasion violate the Fourteenth Amendment's requirement that in every criminal trial the state is required to prove each element of the criminal offense beyond a reasonable doubt. The Court went on to hold, concerning *Elmore*-type errors, that conclusive presumptions conflict with the presumption of innocence with which the law endows the accused. These presumptions, likewise, extend to every element of the crime and invade the truth-finding function which, in a criminal case, the law assigns solely to the jury.

I also dissent because the majority, *sua sponte,* addresses the question of the propriety of Yates' death sentence in light of *Enmund v. Florida,* 458 U. S. 782, 102 S. Ct. 3368, 73 L. Ed. (2d) 1140 (1982); and without the benefit of briefs, oral arguments or consideration of any differences between Florida and South Carolina law dealing with the responsibility

of persons who did not actually inflict the mortal wound, concludes that the death sentence was appropriate, relying upon *Cabana v. Bullock*, _____ U. S. _____, 106 S. Ct. 689, 88 L. Ed. (2d) 704 (1986), and *State v. Patterson*, 285 S. C. 5, 327 S. E. (2d) 650 (1984), both of which are easily distinguishable.

I would reconsider and remand this case to the trial court for a new trial.