23852

Leroy Joseph DRAYTON, Petitioner v. Parker D. EVATT, Commissioner, Central Correctional Institution, Respondent.

(430 S. E. ((2d)) 517)

Supreme Court

*Coming B. Gibbs* of *Gibbs & Holmes,* Charleston, *John H. Blume* and *Franklin W. Draper, South Carolina Death Penalty Resource Center,* Columbia, and *South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*Atty. Gen. T. Travis Medlock* and *Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia, *for respondent.*

Submitted Jan. 19, 1993; Decided May 10, 1993.

Reh. Den. June 9, 1993.

HARWELL, Chief Justice:

We granted petitioner Leroy Joseph Drayton's petition for writ of certiorari to review portions of his application for post-conviction relief (PCR). Drayton alleges that the PCR judge erred in ruling that a number of issues raised by Drayton were barred from collateral review, and in finding that Drayton had received effective assistance of counsel. We disagree and affirm.

## 1. FACTS

Drayton has been convicted twice on charges stemming from the death of a nineteen-year-old cashier at a Kayo gasoline station in Charleston. The convictions and sentences resulting from his first trial were reversed on direct appeal, and the case remanded. *State v. Drayton,* 287 S.C. 226, 337 S.E. (2d) 216 (1985). At retrial, Drayton was convicted of murder, armed robbery, and kidnapping. He was sentenced to death for murder, and to twenty-five years imprisonment for armed robbery. His convictions and sentences resulting from the second trial were affirmed by this Court. *State v. Drayton,* 293 S.C. 417, 361 S.E. (2d) 329 (1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1060, 98 L.Ed. (2d) 1021 (1988), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991).

On PCR, Drayton raised a number of allegations upon which he based his claim that he received ineffective assistance of counsel at his second trial. Drayton also asserted a variety of trial errors. After a lengthy hearing, the PCR judge dismissed Drayton's application on the ground that trial counsel had not performed deficiently. The PCR judge also determined that the trial errors alleged by Drayton could have been raised on direct appeal, and thus were barred from collateral review.

We granted the parties leave to brief four issues:

(1) Whether the PCR judge erred in finding that alleged trial errors were barred from collateral review;

(2) Whether trial counsel was ineffective for failing to present evidence of Drayton's future adaptability to prison;

(3) Whether trial counsel was ineffective for failing to develop testimony that Drayton knew the victim; and

(4) Whether trial counsel was ineffective in his closing argument to the jury in the sentencing phase.

## II. DISCUSSION

### A.

Drayton first contends that the PCR judge erred in concluding that a number of the allegations contained in his PCR application were barred from collateral review. We disagree.

In his PCR application, Drayton claimed that his rights under the Eighth and Fourteenth Amendments were violated as the result of South Carolina law that prevented him from introducing evidence that he would adapt well in prison, and that precluded the jury from receiving accurate information regarding Drayton's eligibility for parole. Drayton also asserted that his rights under the Eighth and Fourteenth Amendments were violated because the death sentence was obtained as a result of irrelevant, improper, and prejudicial testimony in the guilt phase of the trial regarding the character of the victim, as well as improper closing remarks by the solicitor in the guilt and sentencing phases of the trial. Drayton additionally contended that the trial court's penalty phase instruction regarding mitigating circumstances, and its instruction regarding the aggravating circumstance of kidnap-

ping, violated his rights under the Eighth and Fourteenth Amendments. These issues were not addressed in the opinion we issued after Drayton's direct appeal.

This Court conducted an *in favorem vitae* review of Drayton's direct appeal of his death sentence. *In favorem vitae* review requires us to painstakingly inspect capital cases to determine whether prejudicial error has been committed in a trial, irrespective of whether an assignment of error has been made by the defendant. Once we discern there has been no error, that determination becomes binding on the defendant. *See Moorer v. MacDougall*, 245 S.C. 633, 142 S.E. (2d) 46 (1965).

Under the doctrine enunciated in *Simmons v. State*, 264 S.C. 417, 215 S.E. (2d) 883 (1975), errors which can be reviewed on direct appeal may not be asserted for the first time, or reasserted, in postconviction proceedings. Under *in favorem vitae* review, all direct appeal errors are assumed to have been reviewed by this Court, and thus are barred from collateral attack. Drayton urges, however, that the rule articulated in *Simmons* should be inapplicable when the defendant seeking postconviction relief has been sentenced to death. In essence, Drayton would have this Court apply *in favorem vitae* review to collateral proceedings brought prior to our decision abolishing *in favorem vitae* review.[1] Drayton cites *Yates v. Aiken*, 290 S.C. 231, 349 S.E. (2d) 84 (1986), *Rev'd*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed. (2d) 546 (1988), and *Thompson v. Aiken*, 281 S.C. 239, 315 S.E. (2d) 110 (1984), as examples of this Court's implicit acceptance of *in favorem vitae* review in postconviction relief proceedings.

S.C. Code Ann. § 17-27-20(b) (1985) of the Uniform Post-Conviction Procedure Act provides that postconviction relief "is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction." The *Simmons* rule gives effect to the Legislature's clear intent that the postconviction relief procedure is not a substitute for appeal or a place for asserting errors for the first time which could have been reviewed on direct appeal. *Peeler v. State*, 277 S.C. 70, 283 S.E. (2d) 826 (1981); *see also Cummings v. State*, 274 S.C.

---

[1] *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991).

26, 260 S.E. (2d) 187 (1979); *Ashley v. State*, 260 S.C. 436, 196 S.E. (2d) 501 (1973); *Sellers v. Boone*, 261 S.C. 462, 200 S.E. (2d) 686 (1973). Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for postconviction relief absent a claim of ineffective assistance of counsel. *Hyman v. State*, 278 S.C. 501, 299 S.E. (2d) 330 (1983).

We conclude that, contrary to Drayton's contention, *Yates* and *Thompson* do not stand for the proposition that we implicitly have adopted *in favorem vitae* review of postconviction relief proceedings in death penalty cases. Although we addressed direct appeal issues in *Yates* and *Thompson* we did so without discussion or consideration of section 17-27-20(b) or the *Simmons* rule. In our view, *Yates* and *Thompson* are contrary to the legislative intent evidenced by section 17-27-20(b). We adhere to the rule articulated in *Simmons*, and, in so doing, affirm the PCR judge's determination that the trial errors alleged by Drayton are barred from collateral review.[2]

## B.

Drayton next contends that he was denied the right to effective assistance of counsel as guaranteed by the Sixth Amendment. We disagree.

To prove ineffective assistance of counsel, a criminal defendant must show that his attorney's performance was not reasonable under prevailing norms. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. (2d) 674 (1984). Further, a criminal defendant must demonstrate that counsel's deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* We have held that where trial counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel. *Stokes v. State*, — S.C. —, 419 S.E. (2d) 778 (1992).

---

[2] This is not to say that a defendant who has exhausted his opportunities for review on direct appeal and postconviction relief is completely without a remedy. *See Butler v. State*, 302 S.C. 466, 397 S.E. (2d) 87, *cert. denied*, 498 U.S. 972, 111 S.Ct. 442, 112 L.Ed. (2d) 425 (1990) (writ of habeas corpus issued under circumstances where there was a violation, which, in the setting, constituted a denial of fundamental fairness shocking to the universal sense of justice).

Drayton first asserts that trial counsel was deficient for failing to present evidence of Drayton's future adaptability to prison during the sentencing phase. At the time of Drayton's trial, favorable evidence regarding an accused's future adaptability to prison was excluded from a jury's consideration during the sentencing phase of trial. *State v. Koon*, 278 S.C. 528, 298 S.E. (2d) 769 (1982), *appeal after remand*, 285 S.C. 1, 328 S.E. (2d) 625 (1984), *cert. denied, Patterson v. South Carolina*, 471 U.S. 1036, 105 S.Ct. 2056, 85 L.Ed. (2d) 329 (1985). However, an opinion from the United States Supreme Court potentially affecting the viability of this doctrine was pending during Drayton's trial, and within weeks after Drayton was sentenced to death the United States Supreme Court determined that the exclusion of testimony regarding the good behavior of a previously incarcerated defendant deprives the defendant of his right to place relevant evidence in mitigation of punishment before the jury. *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed (2d) 1 (1986). At the PCR hearing, trial counsel acknowledged that he was aware during Drayton's trial that *Skipper* was pending, and that he was cognizant of how to preserve the issue of future adaptability to prison life for appellate review. However, trial counsel decided not to present evidence of future adaptability to prison because his information included unfavorable psychiatric evaluations and poor disciplinary reports compiled during Drayton's confinement as a juvenile in a detention facility, as well as some accounts of misconduct during his prior incarceration as an adult. The information had been collected for use in Drayton's first trial.

Drayton argues that trial counsel was not justified in utilizing the unfavorable psychiatric information because the psychiatrists who evaluated Drayton had not been provided with Drayton's good prison record during his imprisonment on death row after the first trial. To support his contention, Drayton presented testimony from the two psychiatrists who originally had evaluated him. These experts stated that had they been aware of Drayton's good behavior on death row, they would have revised their previous predictions that Drayton would not adapt well to prison. However, these experts also admitted that the controlled environment on death row was inconsistent with the less structured atmosphere of the

general prison population. They also conceded that their testing of Drayton indicated that he was unpredictable and more liable to become violent the less restrictive his surroundings.

Even assuming the trial counsel could have provided Drayton's experts with information that would have resulted in their developing a more favorable prediction regarding Drayton's future adaptability to prison, we are not convinced that trial counsel should have attempted to present this evidence in mitigation of punishment. Drayton's past actions in juvenile detention and when incarcerated as an adult reflect a mixed picture of his ability to function in a prison setting. An attempt to develop favorable evidence of future adaptability would have opened the door for the prosecution to reveal Drayton's earlier misconduct in prison. Trial counsel also determined that testimony from prison guards that Drayton had behaved well on death row would have had a negative impact on the jury. In our view, there is evidence to support the PCR judge's finding that trial counsel was not ineffective for failing to present evidence of Drayton's future adaptability to prison.

Drayton next asserts that trial counsel should have developed testimony that Drayton and the victim knew each other in order to rebut the charge that Drayton had kidnapped the victim.

At the PCR hearing, a number of Drayton's friends and relatives testified that Drayton and the victim had been romantically involved with each other prior to the murder. There is no evidence, however, that Drayton told trial counsel that he had been romantically involved with the victim. Drayton also never informed trial counsel of the witnesses whose testimony Drayton claims corroborates his story. Clearly, trial counsel was not ineffective for failing to investigate an alleged relationship of which he was not aware. Moreover, the PCR judge found Drayton's witnesses' testimony to be incredible. We give great deference to a judge's findings where matters of credibility are involved since we lack the opportunity to directly observe the witnesses. *S.C. Dept. of Social Services v. Forrester*, 282 S.C. 512, 320 S.E. (2d) 39 (Ct. App. 1984); *cf. Stokes*, —— S.C. at ——, 419 S.E. (2d) at 779. Thus, even if trial counsel had been ineffective, there is no evidence his deficient performance would have prejudiced the defense.

Drayton told trial counsel only that he had met the victim on several occasions and knew her well enough to speak to her when he stopped by the Kayo station. Based on this information, trial counsel concluded that showing the victim trusted Drayton could impact negatively on the jurors, who could find kidnapping even had the victim left the Kayo station voluntarily with Drayton. *See* S.C. Code Ann. § 16-3-910 (Supp. 1992) (felony to seize, confine, inveigle, decoy, kidnap, abduct, or carry away any other person by any means whatsoever without authority of law). We agree with the PCR judge that trial counsel's decision not to emphasize the fact that Drayton and the victim knew each other was reasonable.

Drayton finally contends that trial counsel was ineffective in his closing arguments during the sentencing phase of the trial. Drayton claims that trial counsel failed to offer any meaningful reason why Drayton should be sentenced to life imprisonment rather than to death. Drayton complains that trial counsel cast him in a bad light by reminding the jury that Drayton had not "been a great pillar of the community" and that Drayton had not "[done] this or was involved in this for any reason because of being poor or what have you."

In our view, taking the closing argument as a whole, trial counsel endeavored to appeal to the jury's sense of mercy. Trial counsel acknowledged that nothing, not even Drayton's death, would bring the victim back or ease the pain suffered by the victim and her family. Trial counsel observed that it would be easier for the jury to save "the life of someone who has done something significant but for whatever bizarre reason took somebody else's life," and entreated the jury to give Drayton the same opportunity, even though Drayton "is probably as far down the rung of society as we can get."

The PCR judge found that trial counsel's closing argument " 'proves on that [trial counsel] was ineffective in the sense that all criminal defense lawyers whose clients are found guilty are ineffective. That any more argument or different contentions might possibly have altered this result would be sheer speculation.' " (citing *Barfield v. Harris*, 540 F. Supp. 451, 461 (E.D.N.C. 1982), *aff'd*, 719 F. (2d) 58 (4th Cir. 1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed. (2d) 357

(1984)). Our reading of trial counsel's closing argument in the sentencing phase supports this finding.

We must uphold an order of a PCR judge if there is any evidence in the record to support his ruling. *Webb v. State,* 281 S.C. 237, 314 S.E. (2d) 839 (1984). We discern that the evidence supports the PCR judge's determination that Drayton's allegations of trial errors are barred from collateral review, and that Drayton received effective assistance of counsel. The order of the PCR judge is

Affirmed.

CHANDLER, TOAL and MOORE, JJ., concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Judge:

I respectfully dissent. I would hold that any substantive direct appeal issues raised by the petitioner in this capital case are not barred from collateral review in postconviction relief (PCR) proceedings.

Under the majority's decision, the procedural bar established in *Simmons v. State,* 264 S.C. 417, 215 S.E. (2d) 883 (1975), is revived by prohibiting consideration of this capital prisoner's direct appeal issues on PCR review. Although the majority concedes that the *Simmons* rule has been abrogated by this Court in two instances[1] when it considered direct appeal issues in conjunction with PCR proceedings, several of this Court's recent decisions reveal that it has consistently addressed direct appeal issues during PCR review in both capital and noncapital cases.[2]

Additionally, what I view as the far more damaging precedential effect of imposing the *Simmons* rule on capital defendants is further erosion of the procedural protections formerly available in South Carolina. When a majority of this Court

---

[1] *See Yates v. Aiken,* 290 S.C. 231, 349 S.E. (2d) 84 (1986), *rev'd,* 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed. (2d) 546 (1988); and *Thompson v. Aiken,* 281 S.C. 239, 315 S.E. (2d) 110 (1984).

[2] *See, e.g., Plyler v. State,* — S.C. —, 424 S.E. (2d) 477 (1992) (noncapital); *Graves v. State,* — S.C. —, 422 S.E. (2d) 125 (1992) (noncapital); *Plath v. State,* — S.C. —, 420 S.E. (2d) 834 (1992) (capital); *Brown v. State,* — S.C. —, 412 S.E. (2d) 399 (1991) (noncapital); and *Dover v. State,* 304 S.C. 433, 405 S.E. (2d) 391 (1991) (noncapital).

abolished the doctrine of *in favorem vitae* review of direct appeals in death penalty cases, one of the two grounds asserted to rationalize its actions was the availability of meaningful postconviction relief. *See State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315, 324 (1991).

In a relatively recent case, *Aice v. State,* 305 S.C. 448, 409 S.E. (2d) 392 (1991), this Court determined that a claim of ineffective assistance of PCR counsel is not grounds for a successive PCR application. Apparently, the gravamen of petitioner's assertions emanates from PCR counsel's failure to couch direct appeal issues in a claim of ineffective assistance of counsel. I am convinced that the majority's decision in this death penalty case to deny petitioner the right to have crucial issues considered on collateral review effectively renders the already narrowed provision for PCR a superficial remedy and denies petitioner his equal protection rights under the federal and state constitutions.

Notwithstanding a series of underlying circumstances—the failure of petitioner's trial counsel to object and thereby preserve the issues for direct appeal, the failure of petitioner's PCR counsel to properly frame the issues, and the failure of this Court to recognize the issues as appropriate for consideration on direct appeal *in favorem vitae* and/or its disposition of such issues,[3]—the majority affirms the judgment of the PCR court; thereby denying the petitioner's claims without regard to their merits.

I would ameliorate the denigration of meaningful appellate review created by the decision in *State v. Torrence, supra,* and restore substance to the constitutional safeguards by affording, on collateral review, the right to have substantive issues adjudicated on the merits.

---

[3] *See State v. Drayton,* 293 S.C. 417, 361 S.E. (2d) 329 (1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1060, 98 L.Ed. (2d) 1021 (1988), *overruled on other grounds,* [*see State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991)].