357 F.3d 461
 James W. WILSON, Petitioner-Appellee,
v.
Jon E. OZMINT, Director, South Carolina Department of Corrections; (CA-02-2030-0-10BD) Henry Dargan McMaster, Attorney General, State of South Carolina, Respondents-Appellants.
 No. 03-3.
 United States Court of Appeals, Fourth Circuit.
 Filed: February 17, 2004.
 
 COPYRIGHT MATERIAL OMITTED Before WILKINS, Chief Judge, and WIDENER and LUTTIG, Circuit Judges.
 
 ORDER
 
 1
 Before the court is a motion by appellee Wilson for leave to file a petition for rehearing and a suggestion for rehearing en banc out of time, together with a proposed petition and suggestion. The court hereby denies the motion and dismisses as untimely the petition and suggestion.
 
 
 2
 For the reasons, and in the manner, set forth below, however, Part VI of our opinion of December 17, 2003 is hereby amended.
 
 
 3
 In our earlier panel opinion, we held that Wilson was precluded from raising in federal court either of his claims related to a report prepared by the Quality Care Review Board (QCRB), because he was either procedurally barred from raising, or failed to exhaust, those claims in state court. See 352 F.3d at 867. In his submitted petition for rehearing, Wilson argues that this holding was in error because the South Carolina Supreme Court's order, which granted his motion to defer, authorized him to pursue both claims in post-conviction relief.[1] Wilson only obliquely referenced this argument in a single sentence of his merits brief to this court,[2] and made no mention of it whatsoever at oral argument.
 
 
 4
 Notwithstanding Wilson's failure to provide any support for the bare assertion in his brief that it was error for the state courts to hold that his QCRB claims were procedurally defaulted, we considered and dismissed the argument on the ground that Wilson's motion to defer consideration (and the state Supreme Court's grant of that motion) only allowed him to raise these claims at a later date before the state Supreme Court, and did not authorize him to raise them subsequently in post-conviction relief proceedings. In so holding, we accepted, without any argument from Wilson to the contrary, the state PCR court's conclusion that the state Supreme Court's order "merely authorized that Court, not [the state PCR court], in an appeal from the state PCR action, if any to consider the matter de novo." 352 F.3d at 867 (quoting J.A. 587).
 
 
 5
 In his petition for rehearing, Wilson now expansively advances the argument that the state PCR court erred in its procedural default rulings, and he grounds this argument on the specific language of the request that he made to the South Carolina Supreme Court in his motion to defer consideration, for the first time on this appeal providing citation to and quotations from this motion. (The contents of this motion were mentioned in neither the opinion of the district court nor the state post-conviction relief court.). As Wilson's petition now reveals, this motion asked the state Supreme Court, not merely, as our panel opinion stated, "to review the reports with experts and to take additional testimony," 352 F.3d at 866, but also to "defer consideration of the issues raised by appellant's fourth exception ... to such collateral proceedings as may later be held... pursuant to the Post-Conviction Procedures Act, S.C.Code § 17-27-10." J.A. 3837.
 
 
 6
 Despite Wilson's failure to develop this argument or even to direct the court to the source on which this argument depends, we amend our opinion to reflect the actual requests made in Wilson's motion to defer consideration of his claims related to the QCRB report and, as discussed below, the somewhat different conclusions that we now reach on the question of whether Wilson's procedural default in state court bars our review of his federal claims here. We are willing to do so in this circumstance because the requests made by Wilson in his motion to the state supreme court, not brought to the court's attention until after it issued its opinion in this case, render the panel opinion's analysis of these claims unresponsive to the unique circumstances surrounding the state post-conviction relief court's determination that Wilson had procedurally defaulted these claims. The mandate of the court has not yet issued in this case, and, therefore, we may, at our discretion, "amend what we previously decided to make it conform," to the facts of the case, see Alphin v. Henson, 552 F.2d 1033, 1035 (4th Cir.1977), without need of finding that the case presents the sort of "grave, unforeseen contingencies," which would be necessary to recall a mandate that had already issued, see Calderon v. Thompson, 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).
 
 
 7
 After consideration of the cited motion and presented arguments, we conclude that Wilson was not barred from raising these claims in federal court for the reasons that we stated in our panel opinion. We find, however, that Wilson is barred from challenging the trial court's in camera review of the QCRB report in federal court because he defaulted that claim in state court due to his counsel's invitation of such review. We also hold that the state PCR court's decision, affirming the trial court's order quashing Wilson's subpoena of the QCRB report, was both not "objectively unreasonable" under 28 U.S.C. § 2254(d)(1) and harmless under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Therefore, we affirm our previous judgment, vacating the district court's grant of the writ of habeas corpus, but order that Part VI of our panel opinion is amended so as to substitute the reasoning and conclusions below for the reasoning and conclusions that appear in Part VI of our panel opinion:
 
 
 8
 The Quality Care Review Board conducted an investigation into the adequacy of Wilson's treatment in the state mental health system in South Carolina, following Wilson's shooting spree at Oakwood Elementary School. The investigation culminated in a report (the "QCRB report"), detailing Wilson's history in the state mental health system and tending to absolve the state of responsibility for Wilson's acts. Wilson subpoenaed the report from the Department of Mental Health in April 1989. The department moved to quash the subpoena and, at the suggestion of Wilson's counsel, proposed that the state trial court review the report in camera to determine the relevancy of the documents. J.A. 944. Wilson's counsel, Belser, told the court that he had no problems with this procedure, J.A. 948, and, in fact, informed the court that it would be reviewing the report in camera "at our request." J.A. 944. After reviewing the report, the state trial court found that it was not relevant to Wilson's proceedings and quashed the subpoena. J.A. 960.
 
 
 9
 In his appeal to the South Carolina Supreme Court, Wilson initially listed the trial court's denial of access to the report as Exception 4 in his appeal, but, after the court gave Wilson access to the report, he entered a motion for the court to "defer consideration of the issues raised by appellant's fourth exception ... to such collateral proceedings as may later be held ... pursuant to the Post-Conviction Procedures Act, S.C.Code § 17-27-10." J.A. 3837. The South Carolina Supreme Court granted the motion, without explanation, on May 10, 1990, and, in its opinion addressing Wilson's remaining claims, it did not mention those related to the QCRB report. See generally, State v. Wilson, 306 S.C. 498, 413 S.E.2d 19 (1992).
 
 
 10
 Wilson next attempted to raise his claims related to the QCRB report before the state PCR court. The state PCR court rejected both claims on procedural and substantive grounds. On procedural grounds, it held that neither of Wilson's claims could be raised before a post-conviction relief court, because, under South Carolina law, claims that could have been raised before a trial court or on direct appeal may not be raised in post-conviction relief proceedings. J.A. 586; see Drayton v. Evatt, 312 S.C. 4, 430 S.E.2d 517, 519 (1993) ("[E]rrors which can be reviewed on direct appeal may not be asserted for the first time, or reasserted, in post-conviction proceedings."). The state PCR court reasoned that the state Supreme Court's order granting Wilson's motion to defer did not alter the limited jurisdiction of a post-conviction relief court under S.C.Code § 17-27-10. It explained, "[t]he claim, as deferred by the South Carolina Supreme Court, is one solely within the appellate jurisdiction of the Supreme Court of South Carolina because a trial court judge — at the time of the original action — has already ruled on the matter." J.A. 588.
 
 
 11
 The state PCR court also held, in the alternative, that Wilson could not challenge the trial court's review of the QCRB report in camera, either on direct appeal or in a PCR hearing, because Wilson's counsel invited the trial court's action. J.A. 596-97.
 
 
 12
 The state court also rejected both of Wilson's claims on substantive grounds. It affirmed the trial court's quashing of the subpoena on the ground that, "it contained neither exculpatory nor mitigating evidence that was undisclosed in a different form." J.A. 590. Likewise, the PCR court rejected Wilson's claim that the trial court improperly considered the QCRB report in sentencing him to death, finding that "the sealed document was not considered by the trial judge for purposes of either the acceptance of the plea of guilty but mentally ill or the imposition of the particular sentence." J.A. 598 (emphases in original).
 
 
 13
 In our panel opinion, we held that we were barred from considering either of Wilson's claims because Wilson either failed to exhaust, see 28 U.S.C. § 2254(b), or procedurally defaulted, see Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), his claims in state court. See 352 F.3d at 867. Reconsidering this holding in light of the specific requests made by Wilson in his motion to the state Supreme Court to "defer consideration of the issues raised by appellant's fourth exception ... to such collateral proceedings as may later be held ... pursuant to the Post-Conviction Procedures Act, S.C.Code § 17-27-10," J.A. 3837, we conclude that the procedural ground invoked by the state PCR court, though itself sound and consistently applied, is inadequate in these particular circumstances to foreclose our review.
 
 
 14
 The state PCR court held that Wilson could not proceed with his claims related to the QCRB report in post-conviction proceedings because he could have raised these claims before the trial court or on direct appeal. J.A. 586-88; Simmons v. State, 264 S.C. 417, 215 S.E.2d 883, 885-86 (1975). Absent the state Supreme Court's order granting Wilson's motion to defer consideration of these claims to post-conviction proceedings, see J.A. 3834-38, the state PCR court's reliance on this "independent and adequate" state procedural rule would undoubtedly bar him from raising those claims in federal court.[3] However, the state Supreme Court's order granting Wilson's motion presents the application of this rule in an unlikely — and apparently unique — posture. By allowing Wilson to defer consideration of his claims to post-conviction relief proceedings, the order appears to sanction precisely what the rule announced in Simmons, and applied consistently since, prohibits: the consideration of issues that could have been raised at trial or on direct appeal in a post-conviction relief proceeding. See Simmons, 215 S.E.2d at 885-86.
 
 
 15
 Under these unusual circumstances, we must consider whether this is an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). We believe that it is. As in Lee, Wilson "substantially complied with [South Carolina's] key rule." See 534 U.S. at 382-83, 122 S.Ct. 877. Wilson, after all, did object to the trial court's quashing of his subpoena, did list that objection as an exception in his appeal of the trial court's decision, and only failed to make his claim on direct appeal after he received what he reasonably believed to be the blessing of the South Carolina Supreme Court. Compare Lee, 534 U.S. at 382-83, 122 S.Ct. 877.[4] Also as in Lee, "no published [South Carolina] decision demands unmodified application of the [r]ule[] in the [] situation [Wilson]'s case presented." Id. at 387, 122 S.Ct. 877. Wilson's "predicament, from all that appears, was one [South Carolina] courts had not confronted before." Id. at 382, 122 S.Ct. 877. In these circumstances, we conclude that the application of the Simmons rule to prevent Wilson from proceeding with his claim in state post-conviction relief proceedings falls within that narrow class of cases where an otherwise sound state rule proves not to be sufficiently adequate to forbid federal review.
 
 
 16
 We nevertheless hold that we are barred from granting relief to Wilson on his claim that the trial court improperly considered the QCRB report in its sentencing decision. As the state PCR court held, Wilson invited the trial court to take this action when he assured the court that he had no problem with its consideration of the report in camera. J.A. 594-95. Under South Carolina law, "the failure to object to proceedings below waives the presentation of those issues on appeal," or "in post-conviction absent an allegation of ineffective assistance of counsel." See, e.g., Cummings v. State, 274 S.C. 26, 260 S.E.2d 187, 188 (1979); Miller v. State, 269 S.C. 113, 236 S.E.2d 422 (1977) (same). The preclusive effect of an invitation of error is, if possible, more severe. See State v. Robinson, 149 S.C. 439, 147 S.E. 441, 443 (1929) (holding that "counsel is [] in no position to complain as to matters... not only without objection on his part, but when solicited by him"). This procedural rule is long-standing and has been strictly applied in South Carolina and by this circuit, see, e.g., State v. Logan, 279 S.C. 345, 306 S.E.2d 622, 624 (1983); Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir.1993) (en banc) (per curiam) (holding that "no exception to the invited error doctrine has ever been adopted by this circuit"). It, therefore, constitutes an adequate and independent basis for the state PCR court's rejection of Wilson's claim.
 
 
 17
 Moreover, unlike the state PCR court's procedural ruling based on Simmons, this ruling is unaffected by the state Supreme Court's order granting Wilson's motion to defer consideration. Wilson requested that the South Carolina Supreme Court defer consideration of his claim to post-conviction proceedings after he consented to the trial court's review of the report. The order, which only allowed Wilson to defer consideration of his claims, did nothing to correct the preclusive effect of this waiver. Accordingly, we vacate the district court's grant of relief on this claim. See Coleman, 501 U.S. at 750, 111 S.Ct. 2546.
 
 
 18
 Because we hold that the state trial court's procedural ruling did not rest on a sufficiently adequate state procedural ground on Wilson's claim that the state PCR court unconstitutionally quashed his subpoena of the QCRB report, we now review the court's rejection of this claim on the merits. We reiterate that we may not grant a writ of habeas corpus to Wilson unless we conclude either that the state court's decision was "contrary to, or an unreasonable application of, clearly established Federal law," see 28 U.S.C. § 2254(d)(1), or that its decision "was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings," 28 U.S.C. § 2254(d)(2).
 
 
 19
 It is clear that the state PCR court's decision was not "contrary to" federal law. Although the state court did not quote — or even make citation to — a federal case, this does not mean that it is "contrary to ... clearly established Federal law." See Mitchell v. Esparza, 540 U.S. 12, ___, 124 S.Ct. 7, 11, 157 L.Ed.2d 263 (Nov. 3, 2003). In fact, the Supreme Court has held that, with regard to the "contrary to" inquiry under section 2254(d)(1), "a state court need not even be aware of [its] precedents, `so long as neither the reasoning nor the result contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam)). The state PCR court's rejection of Wilson's claim in this case was based on its conclusion that, "the trial judge properly found that [the QCRB report] contained neither exculpatory nor mitigating evidence that was undisclosed in a different form." J.A. 590. We believe this demonstrates that the court was conducting the proper inquiry, under Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), and that therefore its decision was not "contrary to ... clearly established Federal law." See id. at 5, 106 S.Ct. 1669 (holding that the relevant question is whether the court's decision "deprived the petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment").
 
 
 20
 We next consider whether the state court applied the governing legal rule unreasonably to the facts of Wilson's case. See Williams, 529 U.S. at 407-08, 120 S.Ct. 1495. After thoroughly reviewing the report, we hold that it did not.
 
 
 21
 Wilson argues that the report contained details that demonstrated that Beckman Mental Health Center, Self Memorial Hospital and the Probate Court communicated inadequately with one another in regard to Wilson's care. The report refers to only two instances of miscommunication, however, both of which were exceedingly minor. First, on April 10, 1988, Wilson was admitted to Self Memorial Hospital, "at the request of his family and without Beckman Center's awareness." J.A. 2959. Wilson's case manager at the Beckman Center discovered that he was being treated at Self Memorial five days later and visited him shortly thereafter. Id. Second, in May, 1983, the Probate Court prepared papers for Wilson's emergency admission to the South Carolina State Hospital in response to suicidal and homicidal remarks that Wilson had made; however, Wilson's "certifying psychiatrist" intervened and sent him to Self Memorial, instead, where Wilson would have access to private psychiatrists. Id. The report states that the Beckman Center, where Wilson was not treated until June 1986, was not aware that Wilson had been treated at Self Memorial, rather than South Carolina State Hospital, until this fact was discovered by the QCRB's investigation. J.A. 2959.
 
 
 22
 The state PCR court's conclusion that these two incidents of miscommunication failed to constitute mitigating evidence was eminently reasonable. At worst, these two incidents taken together demonstrate that the Beckman Center was not able to monitor perfectly, at all times, actions taken by Wilson and his family with regard to Wilson's mental health. Neither incident shows evidence of mistreatment — or even mismanagement — by the state. And, critically, there is no evidence that either instance of miscommunication deprived Wilson of care he needed or, for that matter, affected Wilson's treatment at all. Thus, it was not unreasonable for the state PCR court to conclude that such evidence was not potentially mitigating. See Skipper, 476 U.S. at 4-5, 106 S.Ct. 1669.
 
 
 23
 The QCRB report also included the statement that, "[t]he Board could find no documentation that any family member ever accompanied [Wilson] to the clinic for counseling, or therapy, or that the Center ever attempted to include them in treatment." J.A. 2959. The state PCR court did not dispute that this statement was mitigating, but, instead, concluded that Wilson had not been deprived of his right to present the information to the sentencing court. The state court explained that "the defense had access to and relied upon" the materials on which the QCRB report's conclusion was based, apparently presuming that, because Wilson could have summarized the evidence in the same fashion that the QCRB report did, the state trial court's ruling did not prevent him from presenting any evidence to the sentencer. J.A. 592-93. We hold that this conclusion was, at the very least, not "objectively unreasonable." Though it may be argued that the conclusion of a state-appointed Board would have been given greater weight by the sentencer than, say, the testimony of an expert witness for Wilson, see Skipper, 476 U.S. at 8, 106 S.Ct. 1669, it was not unreasonable for the state PCR court to conclude that this would not be so in this particular case, where the QCRB report's conclusion concerned a mere summation of facts, equally available to Wilson and the QCRB.
 
 
 24
 We also conclude that, even were the state court's conclusion unreasonable in this regard, Wilson's inability to present this single, mitigating conclusion from the QCRB report did not have a "substantial and injurious effect" on the court's ultimate decision to sentence him to death. See Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The available evidence regarding the involvement of Wilson's family in the treatment of his mental illnesses was more complicated than the QCRB report's bare conclusion indicates. Wilson's family may not have been active in Wilson's treatment at the Beckman Center, but, as the testimony of Dr. Baber, Wilson's treating psychiatrist for the period covered by the report, demonstrates, this lack of enthusiasm for the Beckman Center did not signify a lack of interest in Wilson's well-being generally.[5] When such equivocal evidence regarding the involvement of Wilson's family in his therapy is weighed against both the mitigating evidence of Wilson's severe mental illness and history of physical abuse and the aggravating evidence surrounding Wilson's murder of two eight-year old girls in an elementary school, see J.A. 1557-58 (listing mitigating and aggravating factors found by the sentencing court); 352 F.3d at 863 n.12 (detailing mitigating evidence of physical and verbal abuse), we believe that it is extremely unlikely that it would have had any effect, much less a "substantial and injurious" one, on the court's eventual decision to sentence Wilson to death.
 
 
 25
 Thus, we conclude that the state PCR court's conclusion was not "objectively unreasonable" and that the effect of any error was harmless under Brecht, 507 U.S. at 637, 113 S.Ct. 1710.
 
 
 
 Notes:
 
 
 [1]
 The order of the South Carolina Supreme Court stated simply that Wilson's "Motion to Defer Consideration is granted." J.A. 3159
 
 
 [2]
 The single sentence in Wilson's 124-page brief referencing this argument stated, without citation, that "[t]hese [state procedural] rulings, however, are completely inconsistent with the state Supreme Court's prior determination that the QCRB report should be litigated in post-conviction." Petitioner's Br. at 65. In a footnote on the same page, Wilson also argued erroneously that the state abandoned these claims in its briefCompare id. at 65 n. 23 with Appellant's Br. at 75-76 (arguing expressly that Wilson procedurally defaulted these claims in state court).
 
 
 [3]
 This rule is both "firmly established and regularly followed,"see, e.g., Gibson v. State, 329 S.C. 37, 495 S.E.2d 426, 428 (1998); Drayton, 430 S.E.2d at 519; Cummings, 260 S.E.2d at 188; Irick v. State, 264 S.C. 632, 216 S.E.2d 545, 546-47 (1975); Simmons, 215 S.E.2d at 885-86.
 
 
 [4]
 While the order itself does not address whether or how it affected the operation of the state's procedural limitations on post-conviction relief, we believe that Wilson's reliance on it was reasonable in light of the explicit request in his motion that "the Court issue its order deferring consideration of the issues raised by appellant's fourth exception... to such collateral proceedings as may later be held in this case pursuant to the Post-Conviction Procedures Act, S.C.Code § 17-27-10et seq." J.A. 3837.
 
 
 [5]
 As early as January, 1984, Wilson's grandmother had been instrumental in getting Wilson to see Dr. Baber when Wilson began "having what was considered to be threats of homicide and threats of suicide." J.A. 1207. Wilson's mother also spoke to Dr. Baber at this time to confirm with him Wilson's claims that his father abused him. J.A. 1209. Even more critically, Wilson's grandmother and mother were the driving force behind Wilson's return to therapy in September 1987, approximately one year before the shooting. Dr. Baber told the court,
 I think his grandmother wanted him to come back into therapy sessions. He was not particularly motivated towards his therapy sessions. It was at the insistence of the mother and the grandmother that he attended therapy sessions.
 J.A. 1211. Moreover, as Wilson's behavior became more extreme in 1988, both his parents and his grandmother attempted to intervene to have him admitted again to the state hospital, and, when that failed, to Self Memorial. J.A. 1212.